UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NBA PROPERTIES INC., *et al*.,<br><br>　　　　Defendants. | Case No. 23-cv-05069-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING MOTION TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 25, 42 |

On March 22, 2024, the Court held a hearing on defendants' motion to dismiss the first amended complaint. For the reasons set forth below, defendants' motion is GRANTED as to the dismissal of NBA Properties, Inc. and National Basketball Players Association and DENIED as to the balance of the motion. In addition, defendants' administrative motion to file under seal portions of the reply brief is GRANTED.

Plaintiff Thomas Fan brings this putative class action against NBA Properties, Inc., National Basketball Players Association, and Dapper Labs, Inc., asserting claims under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and California Civil Code § 1799.3. The first amended complaint ("FAC") alleges that defendants are "partners" in NBA Top Shot, "an unincorporated joint venture" which sells "blockchain video clips" known as "Moments" on www.nbatopshot.com. FAC ¶¶ 2, 7-9. "Moments" are like "21st Century trading cards, which allow fans to own specific pre-recorded video clips of their favorite NBA players performing highlight-worthy plays," and users can buy, sell and trade Moments on nbatopshot.com. *Id*. ¶¶ 2, 22. In or around December 2021, Fan purchased a Moment on nbatopshot.com. *Id*. ¶¶ 6, 53. Prior to his purchase, Fan had created an account with both Facebook and NBA Top Shot. *Id*. ¶ 54. Fan alleges that when he "watched and purchased video clips" on nbatopshot.com, defendants disclosed his "personally

identifiable information to a third-party, Meta." *Id.* ¶¶ 55-56. Defendants transmitted this information through the "Meta Tracking Pixel," a piece of code "that advertisers, like Defendants, can integrate into their websites" and that "tracks the people and type of actions they take" and sends that information to Facebook (Meta). *Id.* ¶ 19. Advertisers control what actions, or "events," that the Meta Tracking Pixel collects. *Id.* ¶ 20. The FAC describes the process by which the Meta Tracking Pixel, through the use of "c_user"[1] and "fr" cookies and four "events," "allows Meta to know, among other things, what nbatopshot.com video clips a particular individual has requested and obtained, and when they have purchased an NFT," as well as a consumer's unencrypted and encrypted Facebook IDs. *Id.* ¶¶ 33-48. "Defendants disclose these identifiers so Meta can match them with a corresponding Facebook profile and link it to that person's subsequent activity on nbatopshot.com." *Id.* ¶ 48.

As an initial matter, defendants contend that the NBA defendants should be dismissed because the joint venture allegations are conclusory. The Court agrees. The FAC alleges that defendants are engaged in a "joint venture" based solely upon a press release announcing that Dapper Labs would "partner with" the NBA entities to develop NBA Top Shot. FAC ¶¶ 2, 7-9. To create a joint venture under California law,[2] the members must: (1) "have joint control over the venture (even though they may delegate it)"; (2) "share the profits of the undertaking"; and (3) "each have an ownership interest in the enterprise." *Unruh-Haxton v. Regents of Univ. of California*, 162 Cal. App. 4th 343, 370 (2008). The FAC does not contain any factual allegations in support of these elements, and accordingly the Court DISMISSES the NBA defendants. Plaintiff is given leave to amend to amplify the joint venture allegations. However, the Court advises plaintiff that allegations

---

[1] The FAC alleges that "[t]he c_user cookie is personally identifiable information because it contains a consumer's unencrypted Facebook ID. A Facebook ID allows *anybody* – not just Facebook – to identify the individual NBA Top Shot purchaser with a Facebook account. If one types www.facebook.com/[FacebookID] into a browser, it will load that individual's Facebook page." *Id.* ¶ 40 (emphasis in original).

[2] The FAC does not invoke California law but Fan's opposition states that "California law applies to the question of whether [defendants] are a joint venture." Dkt. No. 30 at 22 n.7. Defendants apply California law in their briefing but also state that they reserve the choice-of-law question. Dkt. No. 41 at 16 n.8.

based upon the license agreements filed by defendants, without anything more, would not be sufficient to allege a joint venture because, among other things, those agreements expressly disclaim the intent to create a joint venture. *See id*. ("Whether a joint venture actually exists depends on the intention of the parties.").

Defendants also contend that Fan has failed to state a claim under the VPPA or California Civil Code § 1799.3.[3] "To plead a plausible claim" under the VPPA, a plaintiff must allege that (1) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (2) the disclosure was made knowingly, (3) the disclosure was not authorized elsewhere in the statute, and (4) the defendant is a "video tape service provider." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). California Civil Code section 1799.3 provides "[n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, [to] any person, other than the individual who is the subject of the record, without the written consent of that individual." The parties agree that the elements of both statutes are similar, except that the VPPA imposes more stringent requirements for consent, including that the consent is "informed, written consent . . . in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i).

Defendants argue that Fan has failed to plead required information such as his identity, the specific Moments he purchased, and whether he was logged into his Facebook account when he purchased the Moments. Defendants also contend that the FAC fails to allege that the disclosure was made knowingly, and that Fan consented to the disclosure of his information when he created his nbatopshot.com account and every time he logged into the website by agreeing to the website's Privacy Policy. Defendants also argue that Fan did not have any expectation of confidentiality on the nbatopshot.com website, and that Dapper Labs is not a "video tape service provider" under the VPPA and does not "provide video recording sales" under § 1799.3.

---

[3] For ease of reference, the remainder of this order generally refers to "defendants" because all defendants challenge the adequacy of the FAC's allegations and the FAC does not distinguish between defendants. However, the Court's analysis regarding whether Fan has stated a claim relates only to Dapper Labs.

1  The Court concludes that the FAC is sufficiently detailed and alleges the elements of claims under the VPPA and § 1799.3, and that defendants' arguments largely raise factual questions that should be decided on a full factual record. Fan alleges that a Facebook ID is personally identifiable information because it "allows anybody . . . to identify the individual [Moment] purchaser" and "all personal information publicly listed on that profile." FAC ¶¶ 40, 46. The Court finds that this is sufficient as a pleading matter. *See Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 853 (N.D. Cal. 2022) (denying motion to dismiss VPPA claim and stating that "Patreon notes that Plaintiffs have not specifically alleged that their Facebook profiles included their real names or that Patreon knew that these individuals in particular had Facebook profiles, but cites no authority applying that granular a test, particularly at the pleading stage."). Similarly, the Court finds that there is no requirement that Fan allege details such as whether he was logged into his Facebook and nbatopshot.com accounts at the same time, or that he disclose the title of the specific videos that he purchased. *See Martinez v. D2C, LLC*, ___ F. Supp. 4th ___, No. 23-21394-CIV, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (finding "no support" for argument that VPPA plaintiffs must "identify the actual titles that they allege were disclosed" and that "the Court agrees with other courts that have had no difficulty concluding that alleging, generally, that a defendant disclosed the 'name of the video the digital subscriber watched' is sufficient").

As to whether the FAC alleges a "knowing" disclosure, Fan alleges that defendants chose to install the Meta Tracking Pixel on the nbatopshot.com website to enhance their "advertising campaigns," decided which "events" to have recorded and transmitted, and "knowingly disclosed Plaintiff and Class members' PII because they used that data to build audiences on Meta and retarget Plaintiff and Class members for Defendants' advertising campaigns." FAC ¶¶ 4, 19-20, 69, 71. The Court may reasonably infer from these allegations a knowing disclosure of Fan's personally identifiable information. Further, defendants' argument that the personal information was disclosed by Fan's browser and not the nbatopshot.com website raises factual questions not suitable for resolution on a motion to dismiss.

With regard to consent, defendants argue that Fan agreed to the disclosure of his information

when he created his account because he agreed to the Terms of Use and Privacy Policy.[4]  Setting aside the question of whether the Terms of Use and Privacy Policy are conspicuously identified on the website, the Court finds that it is premature to decide the question of consent.  As discussed at the hearing, while the VPPA imposes more stringent requirements for a finding of informed consent, the parties agree that under both statutes a "reasonable consumer" standard applies.  Whether reasonable consumers would understand, based on the 28 page Terms of Use or the 11 page Privacy Policy, that by using the nbatopshot.com website they were consenting to the disclosure of their personally identifiable information to Meta, is a question that should be resolved on a fuller factual record.[5]  In addition, the Court is skeptical of defendants' contention that these policies satisfy the VPPA's "distinct and separate" requirement.  *See Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) (holding that the "distinct and separate" requirement means that there must be a "separate stand-alone consent form" "dedicated *solely* to informing consumers of [the defendant's] intent to share their personally identifiable information with Facebook")  (emphasis in original).

Defendants also contend that NBA Top Shot is an "NFT digital platform" and that that Moments are "digital trading cards" that are not "'similar audiovisual materials' to prerecorded tapes."  Thus, defendants argue, nbatopshot.com is neither a "video tape service provider" ("VTSP") under the VPPA nor does it "provide video recording sales" under § 1799.3.

Under the VPPA, a VTSP includes "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710.  "The Ninth Circuit has yet to speak directly on what constitutes a '[VTSP].'"  *Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL

---

[4] There is a factual dispute as to whether, after Fan created his nbatopshot.com account, he saw a "pop up" window asking him to "reaffirm" his consent to the website's Terms of Use and Privacy Policy every time he logged into the website. As such, the Court declines to take judicial notice of defendants' Exhibit H.

[5] Similarly, the Court cannot conclude as a matter of law that Fan did not have a "reasonable expectation of confidentiality" in using the nbatopshot.com website, when, as Fan notes, account holders are assigned random user names.  In addition, defendants do not cite any authority addressing whether and to what extent courts consider a consumer's "expectation of confidentiality" when evaluating consent under the VPPA or § 1799.3.

4440662, at *7 (S.D. Cal. July 10, 2023). As courts have previously recognized, however, in enacting the VPPA, "Congress[] inten[ded] to cover new technologies for pre-recorded video content" and "used 'similar audio visual materials' to ensure that VPPA's protections would retain their force even as technologies evolve." *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012).

The FAC alleges that Moments are "pre-recorded video clips of . . . highlight-worthy plays [that] contain sound and play on continuous repeat." FAC ¶ 23. The Court agrees with Fan that Moments "have both the audios and the visuals that materials need to be audio visual materials." Dkt. No. 30 at 20. Further, the Court finds that Dapper Labs is "engaged in the business" of the "sale" or "delivery" of Moments because defendant "operates" nbatopshot.com, on which "users can buy, sell, and trade" Moments. FAC ¶ 22. Accordingly, NBA Top Shot is a VTSP subject to the VPPA, and it "provides video recording sales" under § 1799.3.

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. If plaintiff wishes to file an amended complaint, he must do so no later than April 5, 2024.

**IT IS SO ORDERED**.

Dated: March 26, 2024

SUSAN ILLSTON
United States District Judge