**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
       sbogdanovich@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NBA PROPERTIES, INC. and DAPPER LABS, INC.,<br><br>Defendants. | Case No. 3:23-cv-05069-SI<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: June 28, 2024<br>Time: 10:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Susan Illston |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ..................................................................................................................1

II. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS ........................4

    A. The Complaint Plausibly Pleads A Joint Venture Or Partnership..............................4

        1. Courts Often Hold That Video Production Enterprises Like This One Are Joint Ventures ...................................................................5

        2. Defendants' Joint Contributions Of Time, Effort, IP, And Technical Know-How Into NBA Top Shot Establishes A Joint Interest ..........................................................................................6

        3. The NBA's Consultation And Oversight Of NBA Top Shot's Strategic And Operational Matters Establish Joint Control ..........................7

        4. The NBA Shared In NBA Top Shot's Profits And Losses By ███████████████████ A Percentage Of Revenues, And By Risking Its Time, Effort, And Goodwill ...........................................8

        5. The NBA Always Intended To Be A Joint Venturer In NBA Top Shot .................................................................................................11

    B. Mr. Fan Has A Case And Controversy With The NBA ...........................................13

III. CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*April Enterprises, Inc. v. KTTV*,
 147 Cal. App. 3d 805 (1983) ............................................................................................... passim

*Bader Farms, Inc. v. Monsanto Co.*,
 2020 WL 529306 (E.D. Mo. Feb. 3, 2020) .................................................................................. 10

*Berman v. Freedom Fin. Network, LLC*,
 30 F.4th 849 (9th Cir. 2022) ......................................................................................................... 2

*Blackwater Lodge & Training Ctr., Inc. v. Broughton*,
 2008 WL 2339815 (S.D. Cal. June 4, 2008) .............................................................................. 13

*Boquist v. Courtney*,
 32 F.4th 764 (9th Cir. 2022) ......................................................................................................... 3

*Celador Int'l Ltd. v. Walt Disney Co.*,
 347 F. Supp. 2d 846 (C.D. Cal. 2004) .................................................................................. passim

*Crawford v. State Bar of Cal.*,
 54 Cal. 2d 659 (1960) ................................................................................................................. 12

*Daniel v. Cantrell*,
 241 F. Supp. 2d 867 (E.D. Tenn. 2003) ...................................................................................... 13

*DeMartini v. DeMartini*,
 833 F. App'x 128 (9th Cir. 2020) ........................................................................................... 3, 12

*Dinaco, Inc. v. Time Warner, Inc.*,
 346 F.3d 64 (2d Cir. 2003) ................................................................................................. 2, 9, 11

*Doe v. Unocal Corp.*,
 67 F. Supp. 2d 1140 (C.D. Cal. 1999) ........................................................................................ 13

*Dreamstone Ent. Ltd. v. Maysalward Inc.*,
 2014 WL 2608069 (C.D. Cal. June 11, 2014) ..................................................................... 1, 5, 6, 7

*EcoHub, LLC v. Recology Inc.*,
 2023 WL 6725632 (N.D. Cal. Oct. 11, 2023) ...................................................................... passim

*Feldman v. Star Trib. Media Co. LLC*,
 659 F. Supp. 3d 1006 (D. Minn. 2023) ....................................................................................... 13

*Forest v. Equitable Life Assurance Society of U.S.*,
 2001 WL 1338809 (N.D. Cal. June 12, 2001) .............................................................................. 9

*Fox v. Saginaw Cnty.*,
  67 F.4th 284 (6th Cir. 2023) ................................................................................................ 14

*Friel v. Dapper Labs, Inc.*,
  657 F. Supp. 3d 422 (S.D.N.Y. 2023) .................................................................................. 11

*Gakuba v. Hollywood Video LLC*,
  2015 WL 1537781 (E.D. Cal. Apr. 6, 2015) ........................................................................ 13

*Holmes v. Lerner*,
  74 Cal. App. 4th 442 (1999) ..................................................................................... 2, 3, 4, 11

*Ji v. Naver Corp.*,
  2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ..................................................................... 14

*Kirola v. City & Cnty. of S.F.*,
  860 F.3d 1164 (9th Cir. 2017) .............................................................................................. 14

*Kovacik v. Reed*,
  49 Cal. 2d 166 (1957) ........................................................................................................ 5, 9

*Mehr v. Fed'n Internationale de Football Ass'n*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ............................................................................... 14

*MP Nexlevel of Cal., Inc. v. CVIN, LLC*,
  2014 WL 5019639 (E.D. Cal. Oct. 7, 2014) ...................................................................... 8, 12

*Rhodes v. MCIC, Inc.*,
  210 F. Supp. 3d 778 (D. Md. 2016) ..................................................................................... 14

*Rios v. Cnty. of Sacramento*,
  562 F. Supp. 3d 999 (E.D. Cal. 2021) .................................................................................. 14

*Rolan v. Atl. Richfield Co.*,
  2017 WL 3191791 (N.D. Ind. July 26, 2017) ...................................................................... 14

*Rubenstein v. Small*,
  75 N.Y.S.2d 483 (N.Y. App. Div. 1947) ............................................................................... 2

*St. Francis Holdings, LLC v. MMP Cap., Inc.*,
  2022 WL 991980 (E.D.N.Y. Mar. 31, 2022) .................................................................. 2, 11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................................. 14

*Universal Sales Corp. v. California Press Mfg. Co.*,
  20 Cal. 2d 751 (1942) ................................................................................................ 5, 10, 12

*Unruh-Haxton v. Regents of Univ. of Cal.*,
  162 Cal. App. 4th 343 (2008) ............................................................................................ 2, 8

*Weiner v. Fleischman*,
   54 Cal. 3d 476 (1991) .................................................................................................................. 4

I.  INTRODUCTION

Over the course of more than a dozen paragraphs, Plaintiff Thomas Fan's Second Amended Complaint ("SAC") details how the NBA invested its time, effort, talents, and significant amounts of its intellectual property to create and grow the NBA Top Shot Enterprise and promote its video products. ECF No. 50. In public-facing statements and press releases to NBA Top Shot customers, the NBA repeatedly held itself out as a "partner" in this Enterprise and highlighted its "ownership" in this Enterprise. SAC ¶¶ 52, 53, 56. The NBA shares in profits and risks by ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ receiving a hefty percentage of all ▇▇▇▇▇▇▇▇▇▇ sales of NBA Top Shot videos, and risking the value of its intangible assets. *Id*. ¶¶ 57-59 and ECF No. 25, Ex. 2 at 9. The NBA actively participates in strategic and operational decision-making ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ discussing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. ¶ 64. The NBA also exerts significant control over the Enterprise by having the ▇▇▇▇▇▇▇ to approve NBA Top Shot's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. ¶¶ 60-66. As the NBA Commissioner, Adam Silver, aptly summarized: "It's not some virtual world: it's the NBA." *Id*. ¶ 53.

Courts often hold that joint projects between parties to produce and promote video products similar to the one at issue here plausibly allege joint ventures, even if the IP licensing agreement contains a clause like: "Nothing herein contained shall constitute or give rise to a partnership between, or joint venture of, the parties hereto." *Celador Int'l Ltd. v. Walt Disney Co*., 347 F. Supp. 2d 846, 853–54 (C.D. Cal. 2004) (denying motion to dismiss because the complaint plausibly alleged TV producers entered into a joint venture with the Walt Disney Company produce and promote a TV show); *accord April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805 (1983) (reversing trial court's grant of a motion for judgment on the pleadings because complaint alleged a TV producer entered into a joint venture with a TV station to produce and promote a TV show, even though the IP license agreement labeled the producer an "independent contractor"); *Dreamstone Ent. Ltd. v. Maysalward Inc*., 2014 WL 2608069 (C.D. Cal. June 11, 2014) (video game publishers plausibly alleged creating a joint venture with video game designers and developers to create a video game).

Seeking to escape this lawsuit, the NBA repeatedly notes that its license agreement "expressly disclaims" that the Defendants are a joint venture or a partnership. *See* Motion to Dismiss SAC

("MTD"), ECF No. 59, at 1, 5, 6, and 8. But that "argument … fails since the conduct of the parties may create a joint venture despite an express declaration to contrary." *April Enterprises*, 147 Cal. App. 3d at 820; *accord Walt Disney Co.*, *supra*, 347 F. Supp. 2d at 853–54. New York law likewise provides that a "court is not bound by the disclaimer of partnership, joint venture or agency between the parties in determining their true relationship." *St. Francis Holdings, LLC v. MMP Cap., Inc.*, 2022 WL 991980, at *10 (E.D.N.Y. Mar. 31, 2022) (quoting *Rubenstein v. Small*, 75 N.Y.S.2d 483, 485 (N.Y. App. Div. 1947)).[1]

For this same reason, the NBA's attempt to label its compensation as a "royalty" and rely on *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) is inapt. *Dinaco*, like these other cases, set aside the parties' expressed labels and instead evaluated the relationship holistically. Simply put, it is one thing to license a trademark for a set fee; it is another thing for the NBA to routinely participate in management discussions, exert significant management and consultation rights over NBA Top Shot, and trot out its Director of Finance and its Commissioner to actively promote the Enterprise in public. As Dapper's CEO noted, the way the "NBA interacts with startups and technology companies is different … the NBA has been with us as <u>a partner</u> has also helped us think innovatively and also think big and be sustainable." SAC ¶ 60 (quoting Dapper's CEO). "The relationship between the parties was much more involved than a typical arm-length IP licensing agreement." SAC ¶ 60.

As this Court highlighted in its prior Order: "Whether a joint venture actually exists depends on the intention of the parties." ECF No. 48 at 3 (citing *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 370 (2008)). Crucially, however, "[t]he parties need only possess the *general intent to engage in the acts that constitute a partnership* [or joint venture] rather than the specific intent to be partners or [joint venturers]." *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457, n.18 (1999) (emphasis added). This point of law is dispositive. The SAC's allegations that the NBA contributed

---

[1] Throughout its motion, the NBA primarily relies on California law, but notes that New York law is substantially similar. Mr. Fan agrees. As such, "we need not decide which State's law governs 'because both California and New York law dictate the same outcome.'" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022).

OPPOSITION TO MOTION TO DISMISS SAC          2
CASE NO. 3:23-CV-05069-SI

its time, effort, and assets to *develop* and *promote* NBA Top Shot, the NBA's receipt of ▇ and percentage-based fees, and its meaningful consultation rights and veto power over key business decisions plausibly allege that the NBA *intended to act* as a partner or joint venturer in the NBA Top Shot Enterprise—*even if it did not intend for the Court to treat it as one.*

"[T]he intent of the parties [is] revealed in the terms of their agreement, *conduct, and the surrounding circumstances when determining whether a partnership exists*." *EcoHub, LLC v. Recology Inc.*, 2023 WL 6725632, at *5 (N.D. Cal. Oct. 11, 2023) (quoting *Holmes*, 74 Cal. App. 4th at 454) (emphasis in original). As such, the disclaimer the NBA primarily relies on is but one piece of evidence in a larger tapestry of conflicting evidence. "Where evidence is in dispute the existence or nonexistence of a joint venture is a question of fact to be determined by the jury." *April Enterprises*, *supra*, 147 Cal. App. 3d at 820. Deciding these factual questions is inappropriate on a Rule 12(b)(6) motion, where a "court must 'draw all reasonable inferences in favor of the nonmoving party.'" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

Throughout its motion, the NBA cites various cases out-of-context which note that this or that piece of evidence—*standing alone*—is not enough to allege a joint venture. Yet this misses the forest for the trees. In determining the existence of a joint venture, courts do not look at any one fact *in isolation*, but at all the facts *as a whole*. And *taken together*, here, the SAC plausibly alleges a joint venture. Where, as here, a plaintiff could "produce[] evidence that could show that the [defendants] shared profits, participated in the management of the [enterprise], and held themselves out as a partnership when leading the [enterprise,] [s]uch evidence is enough to create a question of fact as to the existence of a partnership." *DeMartini v. DeMartini*, 833 F. App'x 128, 131 (9th Cir. 2020) (citing cases). For these reasons, the NBA's motion should be denied.[2]

---

[2] The NBA's Rule 12(b)(1) motion on standing grounds improperly recycles the same merits arguments it raises in its Rule 12(b)(6) motion. Those should be rejected as well.

**II.     THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS**

   **A.     The Complaint Plausibly Pleads A Joint Venture Or Partnership³**

"A joint venture is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. The elements necessary for its creation are: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control." *April Enterprises*, 147 Cal. App. 3d at 819 (internal quotation marks and citations omitted). "Whether a joint venture actually exists depends on the intention of the parties." *Id*. As such, "the presence or absence of any of the various elements set forth … is not necessarily dispositive … [T]he crucial factor [is] the intent of the parties revealed in the terms of their agreement, *conduct, and the surrounding circumstances*." *EcoHub, supra*, 2023 WL 6725632, at *5 (N.D. Cal. Oct. 11, 2023) (quoting *Holmes*, 74 Cal. App. 4th at 454) (emphasis in original).

"The parties need only possess the *general intent to engage in the acts that constitute a partnership* rather than the specific intent to be partners." *Holmes*, 74 Cal. App. 4th at 457, n.18 (emphasis added). Here, the NBA and Dapper's alleged conduct and the economic circumstances of the parties' relationship plausibly shows their "general intent to engage in the acts that constitute a partnership" or joint venture. *Id*.

---

³ The NBA cries foul over the SAC's use of the words "enterprise" and "partnership" in addition to "joint venture." MTD at 6-7. But as the NBA's own cited authority states: "A joint venture is 'an undertaking by two or more persons jointly to carry out a single business <u>enterprise</u> for profit.'" *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991) (emphasis added). Here, the SAC discusses how the parties expressed their intent to be "partners in the NBA Top Shot Enterprise." SAC ¶ 52.

And while the "distinction between joint ventures and partnerships is not sharply drawn … from a legal standpoint, both relationships are virtually the same." *Weiner*, 54 Cal. 3d at 482; *accord* MTD at 7 (conceding the same). The SAC alleges that NBA Top Shot is either a "joint venture or partnership," SAC ¶ 2, because it contains characteristics of both. "A joint venture usually involves a single business transaction, whereas a partnership may involve a continuing business for an indefinite or fixed period of time. Yet a joint venture may be of longer duration and greater complexity than a partnership." *Weiner*, 54 Cal. 3d at 482 (internal citation and quotation marks omitted). Here, the NBA Top Shot Enterprise resembles a joint venture because it involves a single business enterprise, but it also resembles a partnership because it is for an indefinite period of time and Defendants ███████████████████████████████████████████████ SAC ¶ 54.

1. **Courts Often Hold That Video Production Enterprises Like This One Are Joint Ventures**

Joint economic arrangements to produce and promote video products like NBA Top Shot videos are routinely classified as joint ventures or partnerships—even where, as here, they contain contractual disclaimers or expressly label their relationship something else. The facts of *April Enterprises*, *Walt Disney*, and *Dreamstone Entertainment*, *supra*, are all remarkably similar to those alleged here, and, as explained more fully below, none of the cases the NBA cites involve comparably close fact patterns.

In *April Enterprises*, the California Court of Appeal held that the plaintiff sufficiently "allege[d] facts supporting creation of a joint venture," where the parties entered into an agreement for the "production and syndication" "of the 'Winchell-Mahoney Time' television show." 147 Cal. App. 3d at 813 and 820. "The requisite joint interest in a common business is supplied by the allegations that the parties planned to co-produce the shows in order to exploit the market for its syndication and that each contributed its own unique talents in furtherance of this objective." *Id*. at 819. "The requisite joint control is supplied by the allegation that each party agreed to have equal rights to initiate syndication of the show." *Id*. And the sharing of profits and losses was established by a contractual provision that the parties would "each receive 50% of the profit derived from any syndication of the show," even though the parties' "contract[] fail[ed] to specifically provide for the unlikely eventuality that syndication of the show would be a losing proposition." *Id*. "[W]here a joint venture involves the contribution of capital by one party and services by the other, neither party is required to reimburse the other for losses sustained. In the event of loss, the party contributing capital loses his capital and the one contributing labor loses the value of his efforts." *Id*. (citing *Kovacik v. Reed*, 49 Cal. 2d 166, 169 (1957)). And "the contract's labelling of appellant as an independent contractor" did not "foreclose[] a finding of joint venture" because "the conduct of the parties may create a joint venture despite an express declaration to the contrary." *Id*. at 820 (citing *Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal. 2d 751, 766 (1942)).

Similarly, in *Walt Disney*, the court also held that the plaintiffs sufficiently alleged they created a joint venture with defendants where they agreed to "produc[e], distribut[e] and exploit" the

*Who Wants to be a Millionaire?* show. 347 F. Supp. 2d at 850 (C.D. Cal. 2004). Plaintiff alleged a joint interest by merely stating that "while the Defendants had rights to exploit the Series, Plaintiffs possessed reversionary rights and rights to merchandising." *Id*. at 854. "Plaintiffs allege that the parties shared profits and losses because the [fee arrangement] was dependent on the profits of the Series." *Id*. "Finally, Plaintiffs allege that they had approval rights, and that [the other party] had meaningful consultation rights, which tends to allege joint control." *Id*. Finally, the presence of an express disclaimer in the parties' contract stating "'Nothing herein contained shall constitute or give rise to a partnership between, or joint venture of, the parties hereto'… is not determinative of the question." *Id*. (citing *April Enterprises*, 147 Cal. App. 3d at 820).

And in *Dreamstone Entertainment*, the complaint "adequately alleged the existence of a joint venture based on the parties' agreement to develop the [*GHUL: 1001 Arabian Nights* video game] and share the resulting profits." 2014 WL 2608069, at *5 (C.D. Cal. June 11, 2014). Joint interest was alleged because "Dreamstone … would [contribute its funds and] own all of the intellectual property associated with the Game" whereas "Maysalward [would contribute its labor to] design and develop the Game." *Id*. at *1. Joint control was alleged because the developers would the design the game, whereas the other party would own the video game's IP and could have "access to revenue reports." *Id*. Profit and loss sharing was alleged because the game developer would receive "a share of the profits generated from the Game's publication," and losses were shared because the developer stood to lose the investment of labor in creating the game. *Id*.

### 2. Defendants' Joint Contributions Of Time, Effort, IP, And Technical Know-How Into NBA Top Shot Establishes A Joint Interest

Applying the legal principles from *April Enterprises* to the case here, the SAC sufficiently alleges the NBA and Dapper teamed up to create the NBA Top Shot Enterprise. The NBA contributed its intellectual property, its brand, and its time and effort to guide the Enterprise's growth, monitor the Enterprise, and publicly promote the Enterprise, and Dapper contributed its "sophisticated" technical knowledge to create "digital products on the blockchain." SAC ¶¶ 52-53, 56; *accord April Enterprises*, 147 Cal. App. 3d at 819 ("joint interest …is supplied by the allegations

that the parties planned to co-produce the shows … and that each contributed its own unique talents in furtherance of this objective."); *see also Dreamstone,* 2014 WL 2608069, *1. Moreover, the court in *Walt Disney* found that the "parties had a joint interest in the business: while the Defendants had rights to exploit the Series, Plaintiffs possessed reversionary rights and rights to merchandising." 347 F. Supp. 2d at 854. Similarly here, Dapper had rights to exploit various NBA game highlights to create various digital products, but such products were always ███████████████ ███████████████████████████████████████████ SAC ¶ 63.

And even if all these other factors were not enough, ███████████████████████ ██████████████████████ ECF No. 25, Ex. 2, at 9.[4] Stock ownership is quintessential joint interest. It is no wonder that the NBA's Adam Silver said "you can really feel the ownership." SAC ¶ 56.

### 3. The NBA's Consultation And Oversight Of NBA Top Shot's Strategic And Operational Matters Establish Joint Control

Here, joint control is established by allegations that the NBA had "approval rights" over all NBA Top Shot ████████████████████████████████████████████████ SAC ¶ 63-66. In particular, the NBA had meaningful consultation rights because the Defendants ████████ ████████ where they discuss █████████████████████████████████████████████ and ██████████████████████████████████████████████████████ SAC ¶ 64. What is more, ██████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ SAC ¶ 63. These allegations mirror the level of joint control alleged in similar cases. *Walt Disney*, 347 F. Supp. 2d at 854 ("Plaintiffs allege that they had approval rights, and that Smith had meaningful consultation rights, which tends to allege joint control."); *April Enterprises*, 147 Cal. App. 3d at 819 ("[t]he requisite joint control is supplied by the allegation that each party agreed to have equal rights to initiate syndication of the show.").

---

[4] The Defendants' license agreement is incorporated by reference to the SAC because it is repeatedly cited and referenced in the SAC.

The NBA cites factually distinguishable cases which say that "'collaboration between two parties to jointly build a project, <u>in and of itself</u>,' does not mean the parties have formed a legal partnership, or a joint venture relationship." MTD at 10 (citing *MP Nexlevel of Cal., Inc. v. CVIN, LLC*, 2014 WL 5019639, at *8 (E.D. Cal. Oct. 7, 2014)) (emphasis added). But here, Mr. Fan alleges more than just "collaboration." He alleges exclusive "control." As noted, the NBA has final say over many aspects of NBA Top Shot. ▮

▮

▮ SAC ¶ 63. ▮

▮ *Id*. ¶ 65. ▮

▮ *Id*. ¶ 66. In other words, the NBA is more of a head coach than it is a ball-boy. And head coaches can still leave layup lines to assistants. "The allocation of responsibilities in operating the business does not necessarily change the character of the joint venture relationship. One having the right to control a business is permitted to delegate responsibilities." *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 371 (2008).

    **4.    <u>The NBA Shared In NBA Top Shot's Profits And Losses By ▮ A Percentage Of Revenues, And By Risking Its Time, Effort, And Goodwill</u>**

Here, Mr. Fan plausibly alleges shared in profits and losses by showing the NBA's total compensation from NBA Top Shot is inextricably linked to success or failure of the Enterprise. The NBA did not receive a flat fee for its efforts; it shared in the NBA Top Shot profits by receiving a percentage fee of ▮

▮ SAC ¶ 57, and even received ▮ ECF No. 25, Ex. 2, at 9. And the parties shared losses because Dapper stood to lose all the time and effort it spent building the blockchain technology, and the NBA stood to lose the value of its goodwill, ▮ ▮ and the time and effort it spent promoting, guiding, and mentoring the Enterprise. SAC ¶ 58. So, if NBA Top Shot made more money, then the NBA made more money. If NBA Top Shot made less money, then the NBA made less money. And if NBA Top Shot crashed

1  and burned, the NBA's goodwill would be tarnished, and the NBA's ▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*.
2  ¶¶ 58-59.

3  Similarly, in *Walt Disney*, the court found profit and loss sharing where they received a
4  percentage: "Contingent Compensation was dependent on the profits of the Series." 347 F. Supp. 2d
5  at 854. Indeed, as this Court recognized in *Forest v. Equitable Life Assurance Society of U.S.*, profit
6  sharing sufficient to create a joint venture can be found with an "Incentive Fee scheme" entitling a
7  party a "$2.5 million … up front" fee as well as "a percentage share of the annual claims experience."
8  2001 WL 1338809, at *5 (N.D. Cal. June 12, 2001) (Illston, J.).

9  It is legally immaterial that Defendants' "contract[] fail[ed] to specifically provide for the
10 unlikely eventuality that syndication of the show would be a losing proposition." *April Enterprises*,
11 147 Cal. App. 3d at 819. "[W]here a joint venture involves the contribution of capital by one party
12 and services by the other, neither party is required to reimburse the other for losses sustained. In the
13 event of loss, the party contributing capital loses his capital and the one contributing labor loses the
14 value of his efforts." *Id*. (citing *Kovacik v. Reed*, 49 Cal. 2d 166, 169 (1957)).

15 The NBA argues that "*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003), is
16 squarely on point [because it] held that a 'royalty agreement is not an agreement to share profits as
17 joint venturers; royalties are simply the contract price paid for licensing a trademark.'" ECF No. 59
18 at 11. Not so. Far from being "squarely on point," *Dinaco* is *hardly* on point.

19 In *Dinaco,* the defendant was "simply" receiving a "price … for licensing a trademark." 346
20 F.3d at 68 (emphasis added).  In other words, the *entire extent* of the parties' relationship was that
21 "Time licensed the TIME LIFE MEDICAL® trademark to PEMI for use on its products" and "that
22 PEMI's offices were located in the Time–Life Building." 346 F.3d at 66-67. Here, in contrast, the
23 NBA did much more than "simply" slap its name on something or lease office space. Rather, the
24 NBA closely collaborated with Dapper on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮  including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SAC ¶ 64, meaning it
26 invested its time, effort, and talents into ensuring the growth of NBA Top Shot. The NBA trotted out
27 its Senior Director and its Commissioner to promote NBA Top Shot. *Id*. ¶¶ 52-53. The NBA also
28 "'collect[s] personal information' from anonymous users [on the NBA Top Shot website] for *its own*

commercial purposes," which may include its own configuration of the Meta Pixel. *Id.* ¶ 62. The NBA also actively manages NBA Top Shot, because it has exclusive oversight authority over ▮▮▮▮ ▮▮▮▮ *id.* ¶ 63, ▮▮▮▮ *id.* ¶ 66, and ▮▮▮▮ *id.* ¶ 65. The NBA can also curate the videos on NBA Top Shot by exercising its right to ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ *Id.* ¶ 63. The NBA even received ▮▮▮▮ ECF No. 25, Ex. 2, at 9. In other words, "the relationship between the parties was much more involved than a typical arm-length IP licensing agreement." SAC ¶ 60. As such, even Dapper's CEO conceded that the NBA's financial stake "did not neatly fit traditional labels like that of a 'royalty.'" *Id.* ¶ 58.

"[U]nlike *Dinaco*, the parties here collaborated on the development of the product itself … exercising a significant measure of joint control over the process." *Bader Farms, Inc. v. Monsanto Co.*, 2020 WL 529306, at *3 (E.D. Mo. Feb. 3, 2020) (holding that receipt of a percentage fee compensation as part of a licensing agreement was still a share of profits sufficient to create joint venture based on other circumstances). Similarly, the California Supreme Court held that a party's "twenty percent … right to <u>royalty</u> payments" is sufficient to create a joint venture if "the parties did not intend to limit their agreement within the narrow confines and technical provisions of the patent law, but that it was their understanding to associate themselves in a common venture for the *development* of a" new product. *Universal Sales*, *supra*, 20 Cal. 2d at 766 (emphasis added) (affirming a final judgment that a joint venture was formed). The same is true here. The NBA and Dapper worked together to *develop*, *introduce*, and *promote* a new kind of digital video product.

Similarly, in *Walt Disney*, the parties' assignment of IP "rights to the concept and format of the [TV show] to [Disney's subsidiaries in exchange for] fixed compensation and 50% of Defined Contingent Compensation," could just as easily been labeled a royalty. 347 F. Supp. 2d at 850. But this, like the express joint venture disclaimer, was not dispositive because the IP assignor still "had approval rights, and [] had meaningful consultation rights." *Id.* at 854.

This approach makes sense. The NBA cannot simply label its ▮▮▮▮ and fees a "royalty" and exculpate itself of joint venture liability, because both California and New York courts have repeatedly held that "the conduct of the parties may create a joint venture" even if there

is "express declaration to contrary." *April Enterprises,* 147 Cal. App. 3d at 820; *accord St. Francis Holdings*, *supra*, 2022 WL 991980, at *10 (E.D.N.Y. Mar. 31, 2022). *Dinaco* stands for the very same proposition. *Dinaco* looked to the conduct of the parties and determined that the defendant was "<u>simply</u>" the licensing of a trademark and disregarded the parties' statements that labeled the relationship "'a new joint venture.'" 346 F.3d at 66. And significantly, the *Dinaco* court was able to make that determination after **four years** of litigation and discovery that ferreted out the true nature of the parties' relationship. 346 F.3d at 67. In fact, years prior, the trial court in *Dinaco* actually denied a Rule 12(b)(6) motion to dismiss. Case No. 1:98-cv-06422-JSM, ECF No. 16 (S.D.N.Y. June 14, 1999). As such, *Dinaco* has little applicability here, at the pleading stage.

The NBA also tries to downplay its reputational risk and a potential loss of goodwill by arguing that "media articles Plaintiff cites regarding reputational damage risk by celebrities and athletes in acting as investors or promoters of other cryptocurrency enterprises are entirely inapposite [because they] involve[] instances where a celebrity or athlete was accused of securities-law violations." ECF no. 59 at 12, n.5. But so is NBA Top Shot. *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422 (S.D.N.Y. 2023) (denying motion to dismiss securities law violations because the NBA Top Shot Moments could plausibly be securities).

### 5. The NBA Always Intended To Be A Joint Venturer In NBA Top Shot

As noted, "the presence or absence of any of the various elements set forth … is not necessarily dispositive … [T]he crucial factor [is] the intent of the parties revealed in the terms of their agreement, *conduct, and the surrounding circumstances*." *EcoHub*, *supra*, 2023 WL 6725632, at *5 (N.D. Cal. Oct. 11, 2023) (quoting *Holmes*, 74 Cal. App. 4th at 454) (emphasis in original). A holistic review of these three factors shows that NBA Top Shot is "not some virtual world: it's the NBA." SAC ¶ 53 (quoting NBA Commissioner Adam Silver). As alleged, "the NBA took an active role in controlling the direction of the NBA Top Shot [E]nterprise" and promoting its product. SAC ¶ 59. The complaint's allegations about joint management, oversight, and control plausibly suggest that "[t]he parties … possess[ed] the general intent to *engage in the acts* that constitute a partnership" or joint venture. *Holmes*, 74 Cal. App. 4th at 457, n.18 (emphasis added).

What is more, people who consider themselves partners will often say they are partners. And here, the parties repeatedly held themselves out as partners in the NBA Top Shot Enterprise, and the NBA repeatedly declared its ownership over the Enterprise. *Id*. ¶¶ 52-53. Coupled together with other alleged facts, the "use of [the NBA] name, the declarations of co-ownership … and the sharing of profits from the [] business… makes it apparent that [the parties] not only held themselves out as partners, but that actually considered themselves to be partners." *Crawford v. State Bar of Cal*., 54 Cal. 2d 659, 665 (1960).

The NBA counters that there is no "authority holding that two parties publicly describing themselves as 'partners'… is sufficient, <u>without more</u>, to establish a legal partnership." MTD at 9 (quoting *MP Nexlevel of Cal., Inc. v. CVIN, LLC,* 2014 WL 5019639, at *8 (E.D. Cal. Oct. 7, 2014)) (emphasis added). But here, Mr. Fan *does* allege more. He alleges the NBA and Dapper "<u>shared profits</u>, <u>participated in the management</u> of the [Enterprise], and held themselves out as a partnership when leading the [Enterprise] … [This] is enough to create a question of fact as to the existence of a partnership." *DeMartini v. DeMartini*, 833 F. App'x 128, 131 (9th Cir. 2020) (emphasis added) (citing cases); *cf. MP Nexlevel*, 2014 WL 5019639, at *2 (only allegations supporting the existence of a partnership were references to being partners in a "grant application," "websites," and "signage that included [a party's] logo").

And while the NBA also repeatedly notes that its license agreement "expressly disclaims" that the NBA Top Shot Enterprise is a joint venture or a partnership, *see* MTD at 1, 5, 6, and 8, this "argument … fails since the conduct of the parties may create a joint venture despite an express declaration to contrary." *April Enterprises*, 147 Cal. App. 3d at 820 (ruling a party could be a joint venturer even though a contractual term labeled the party an "independent contractor"); *Universal Sales*, *supra*. 20 Cal. 2d at 766 (affirming judgment that a patent licensor was a joint venturer even though the contract labeled its payment a "royalty"). And here, the NBA's actions speak louder than its contractual words.

Indeed, the joint venture disclaimer that the NBA relies on is strikingly similar to the disclaimers that the courts in *Walt Disney* or *EcoHub* held were not dispositive. *Compare* ECF No. 25, Ex. 2 at 27 *with Walt Disney*, 347 F. Supp. 2d at 853–54. Similarly, in *EcoHub*, a court in this

District recently denied a motion to dismiss joint venture liability because an amended complaint's detailed "conversations [between two sides' decisionmakers] plausibly suggest intent to operate jointly in the project," 2023 WL 6725632, at *5, even though a draft contract between the parties said "It is not the purpose or intention of this Agreement to create (and it should not be construed as creating) a joint venture, partnership or any type of association," *see* Case No. 3-22-cv-9181-TSH, ECF No. 31, 2023 WL 5164039.

### B. Mr. Fan Has A Case And Controversy With The NBA

The SAC alleges that Mr. Fan's "claimed injury"—the disclosure of his private video consumption information—was caused by "the NBA Top Shot website compel[ing] [a user's] browser to send cookies to Meta." SAC at ¶ 38. Another court already held that this very same allegation was sufficient to allege Article III causation in another VPPA case involving the Meta Tracking Pixel. *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1017 (D. Minn. 2023). The NBA does not cite a single case to the contrary, and co-Defendant Dapper does not contest Mr. Fan's Article III standing. The NBA nevertheless argues that Mr. Fan lacks standing because he "failed to make any specific, plausible allegations as to how NBAP caused his claimed injury." MTD at 13 (citing *Gakuba v. Hollywood Video LLC*, 2015 WL 1537781, at *2 (E.D. Cal. Apr. 6, 2015); *Daniel v. Cantrell*, 241 F. Supp. 2d 867 (E.D. Tenn. 2003)).[5] This is wrong.

Article III causation simply means the plaintiff's injury "is 'fairly traceable' to the" defendant. *Feldman*, 659 F. Supp. 3d at 1016. "In brief, plaintiffs allege that defendants are liable for SPDC's alleged [misconduct] … Based on plaintiffs' allegation that defendants are engaged in a joint venture with SPDC to build the pipeline and related infrastructure, plaintiffs' claims are fairly traceable to actions for which defendants may be liable." *Doe v. Unocal Corp.*, 67 F. Supp. 2d 1140, 1144 (C.D. Cal. 1999) (holding plaintiff had standing); *accord Blackwater Lodge & Training Ctr., Inc. v. Broughton*, 2008 WL 2339815, at *3 (S.D. Cal. June 4, 2008) (holding plaintiff had standing through "sworn testimony that Plaintiff was engaged in a joint venture").

---

[5] As Mr. Fan noted in his opposition to the NBA's first motion to dismiss, *see* ECF no. 30 at 23, neither *Gakuba* nor *Daniels* "concern—let alone even mention—Article III standing at all."

"With regard to causation, Defendant[']s argument ignores that [joint venture law] imposes joint and several liability upon responsible actors… [so the] allegations adequately plead causation for purposes of Article III standing." *Rolan v. Atl. Richfield Co.*, 2017 WL 3191791, at *5 (N.D. Ind. July 26, 2017). In particular, the SAC alleges that the disclosure of private information from nbatopshot.com to Meta is "fairly traceable" to the NBA itself, because the NBA is a joint venturer in NBA Top Shot, and joint venturers are jointly and severally liable for a joint venture's conduct. SAC ¶¶ 88 and 98.[6] If a "complaint …is premised upon the notion of Defendants' joint and several liability," then "[i]t is beyond question that … claims [against one defendant] are 'so related to' the Plaintiffs' claims against [the other defendant] 'that they form part of the same case or controversy under Article III.'" *Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778, 786 (D. Md. 2016).

*None* of the NBA's cited authorities hold otherwise. As noted, some of the NBA's cited cases do not discuss standing at all, while the others do not discuss standing that is premised on participation in a joint venture or on joint and several liability.[7] And to the extent that the NBA seems to argue that the complaint inadequately pleads a joint venture or partnership between the two defendants, that would "improperly conflate [plaintiff's] standing with whether []he would prevail on the merits." *Kirola v. City & Cnty. of S.F.*, 860 F.3d 1164, 1175 (9th Cir. 2017).

### III.  CONCLUSION

For these reasons, Defendants' motion to dismiss should be denied.

Dated:  May 31, 2023                **BURSOR & FISHER, P.A**.

By:   */s/ Stefan Bogdanovich*
     Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)

---

[6] And while not required to show causation, the SAC also alleges that "NBA Properties, Inc." is itself "actively participating in the operation of the NBA Top Shot website and 'collecting personal information' from anonymous users for *its own* commercial purposes." SAC ¶¶ 60-62.

[7] *See Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1056 (N.D. Cal. 2015); *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1010 (E.D. Cal. 2021); *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023); *Ji v. Naver Corp.*, 2022 WL 4624898, at *6 (N.D. Cal. Sept. 30, 2022); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

1
2
3
4
5

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          sbogdanovich@bursor.com

*Attorneys for Plaintiff*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28