**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FAN, MATTHEW KIMOTO, and CLINTON BROWN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NBA PROPERTIES, INC. and DAPPER LABS, INC.,<br><br>        Defendants. | Case No. 3:23-cv-05069-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        September 5, 2025<br>Time:        10:00 a.m.<br>Courtroom:    1<br>Judge:        Hon. Susan Illston |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 5, 2025, at 10:00 a.m., or another time the Court deems more convenient, in Courtroom 1 on the 17th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Susan Illston presiding, Plaintiffs Thomas Fan, Matthew Kimoto, and Clinton Brown (collectively, "Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement") submitted herewith; (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing (the "Motion").

This Motion is made on the grounds that the terms of the proposed Settlement Agreement are fair, reasonable, and adequate, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "[Proposed] Preliminary Approval Order").

The Motion is based on the Declaration of Stefan Bogdanovich (the "Bogdanovich Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Law filed herewith; the pleadings and papers on file in this case; and such evidence and argument as the Court may consider at any hearing on this motion.

Dated:  July 31, 2025                                  **BURSOR & FISHER, P.A.**

                                                      By:      */s/Stefan Bogdanovich*
                                                               Stefan Bogdanovich

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        sbogdanovich@bursor.com

**TABLE OF CONTENTS**

**PAGE(S)**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL AND FACTUAL BACKGROUND ........................................... 4

III.    TERMS OF THE SETTLEMENT ..................................................................... 5

    A.    Class Definition .................................................................................... 5

    B.    The Claims to be Released .................................................................... 5

    C.    The Settlement Benefits ........................................................................ 6

    D.    Other Cases Affected by the Settlement ............................................... 6

    E.    Allocations and Payments from the Settlement Fund ........................... 6

        1.    The Settlement Fund .................................................................. 6

        2.    Service Awards .......................................................................... 7

        3.    Attorneys' Fees and Expense Award ......................................... 7

    F.    Settlement Administration ..................................................................... 8

    G.    The Notice Plan .................................................................................... 9

IV.    PRELIMINARY APPROVAL IS APPROPRIATE .......................................... 10

    A.    The Proposed Settlement Is Fair, Reasonable, and Adequate ............. 11

        1.    The Strength of Plaintiff's Case .............................................. 12

        2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................................................... 15

        3.    The Risk of Maintaining Class Action Status Throughout the Trial ......................................................................................... 15

        4.    The Amount Offered in Settlement .......................................... 15

        5.    The Extent of Discovery Completed and the State of the Proceedings .............................................................................. 16

        6.    The Experience and Views of Counsel .................................... 17

        7.    The Presence of a Governmental Participant ........................... 17

8.   The Reaction of the Class Members to the Proposed Settlement .................................................................................. 17

9.   The Settlement Was the Product of Arm's-Length Negotiations ..................................................................................... 18

B.   Conditional Certification of the Rule 23 Class Is Appropriate ................................. 18

1.   The Class Is Sufficiently Numerous ........................................... 19

2.   There Are Common Questions of Law and Fact .......................... 19

3.   The Class Representative's Claims Are Typical of Those of Other Class Members ................................................................. 20

4.   The Class Representative and Class Counsel Adequately Represent the Class Members ..................................................... 21

5.   The Settlement Class Meets the Requirements of Rule 23(b)(3) Because Common Issues of Law and Fact Predominate ................................................................................ 22

V.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ............................... 22

VI.   THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FINAL APPROVAL HEARING ....................................................... 24

VII.  CONCLUSION ................................................................................................................. 25

1

2

## TABLE OF AUTHORITIES

**PAGE(S)**

3

**CASES**

4

*Abat v. Chase Bank USA, N.A.*,
    2011 WL 13130637 (C.D. Cal. July 11, 2011) ............................................................. 23

5

6

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ....................................................................................... 20

7

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    574 U.S. 815 (2014) ..................................................................................................... 20

8

9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................... 21, 22

10

11

*Ballard v. Insomniac Holdings, LLC*,
    2025 WL 1696558 (N.D. Cal. June 17, 2025)......................................................... 13, 14

12

13

*Carlotti v. ASUS Computer Int'l*,
    2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ............................................................. 17

14

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) ......................................................... 14, 15

15

16

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir.2004) ........................................................................................ 24

17

18

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................. 10, 11

19

*Collins v. Cargill Meat Sols. Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011) ................................................................................. 24

20

21

*Edwards v. MUBI, Inc.*,
    773 F. Supp. 3d 868 (N.D. Cal. 2025)........................................................................... 13

22

23

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ....................................................................................... 13

24

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................... 20, 21

25

26

*Fan v. NBA Props. Inc.*,
    2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ............................................................. 14

27

28

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982) ..................................................................................................... 21

*Ghanaat v. Numerade Labs, Inc.*,
   689 F. Supp. 3d 714 (N.D. Cal. 2023).............................................................. 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...................................................................... 20

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019)............................................................ 10

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)................................................... 12

*Hughes v. Nat'l Football League*,
   No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025)..................................... 13

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) .................................................................. 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)...................................................................... 18

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002).................................................................. 21

*In re Hulu Privacy Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015)............................................................ 12

*In re Hulu Privacy Litig.*,
   2014 WL 2758598 (N.D. Cal. June 17, 2014).................................................. 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019)...................................................................... 19

*In re Lithium Ion Batteries Antitrust Litig.*,
   2018 WL 4215573 (N.D. Cal. Sept. 4, 2018).................................................... 19

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004)...................................................................... 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018)...................................................................... 21

*Jancik v. WebMD LLC*,
   2025 WL 560705 (N.D. Ga. Feb. 20, 2025)............................................... 12, 15

*Lakes v. Ubisoft, Inc.*,
   2025 WL 1036639 (N.D. Cal. Apr. 2, 2025).............................................. 13, 14

*Lee v. Springer Nature Am., Inc.*,
   769 F. Supp. 3d 234 (S.D.N.Y. 2025)............................................................ 13

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ................................................................... 10, 12

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ............................................................................ 22

*Manza v. Pesi, Inc.*,
2025 WL 1445762 (W.D. Wis. May 20, 2025) .................................................. 13

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .............................................................................. 20

*Mercury Interactive Corp. Secs. Litig. v. Mercury, Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ....................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................ 23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 14, 15, 17

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015) ........................................................................ 23

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ...................................................................... 10, 11

*Otsuka v. Polo Ralph Lauren Corp.*,
251 F.R.D. 439 (N.D. Cal. 2008) ....................................................................... 22

*Powers v. Hamilton County Public Defender Com'n*,
501 F.3d 592 (6th Cir. 2007) .............................................................................. 19

*Reppert v. Marvin Lumber & Cedar Co.*,
359 F.3d 53 (1st Cir. 2004) ................................................................................. 22

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ............................................................................... 14

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .............................................................................. 22

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) ........................................................................ 12

*Stark v. Patreon*,
2025 WL 1592736 (N.D. Cal. June 5, 2025)................................................ 5, 16, 19

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................. 10

*Stone v. Howard Johnson Int'l, Inc.*,
   2015 WL 13648551 (C.D. Cal. June 15, 2015)................................................................ 23

*Therrien v. Hearst Television, Inc.*,
   2025 WL 509454 (D. Mass. Feb. 14, 2025)..................................................................... 12

*Therrien v. Hearst Television, Inc.*,
   2025 WL 1208535 (D. Mass. Apr. 25, 2025).................................................................... 12

*Thomas v. Baca*,
   231 F.R.D. 397 (C.D. Cal. 2005)..................................................................................... 20

*Trotsky v. Los Angeles Fed. Sav. & Loan Ass'n.*,
   48 Cal. App. 3d 134 (1975)............................................................................................. 23

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,
   AFL-CIO v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. 2010)........................................................................................... 18

*Uschold v. NSMG Shared Servs., LLC*,
   333 F.R.D. 157 (N.D. Cal. 2019)..................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................................ 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir.)....................................................................................................... 23

*Warner v. Toyota Motor Sales, U.S.A.*, Inc.,
   2016 WL 8578913 (C.D. Cal. Dec. 2, 2016)................................................................... 23

*Wershba v. Apple Comput., Inc.*,
   91 Cal. App. 4th 224 (2001)............................................................................................ 23

*West v. Circle K Stores, Inc.*,
   2006 WL 1652598 (E.D. Cal. June 13, 2006).................................................................. 12

*Wright v. Linkus Enters., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009)..................................................................................... 12

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016)........................................................................................... 13

**STATUTES**

28 U.S.C. § 1715 ................................................................................................................ 9, 17

28 U.S.C. § 1715(b) .............................................................................................................. 24

Cal. Civil Code § 1799.3 .................................................................................................. 1, 4, 6

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................ passim

Fed. R. Civ. P. 23(a) ........................................................................................................ passim

Fed. R. Civ. P. 23(b) ........................................................................................... 3, 18, 20, 22

Fed. R. Civ. P. 23(c) ................................................................................................. 19, 22, 24

Fed. R. Civ. P. 23(e) ................................................................................................... i, 11, 19

**OTHER AUTHORITIES**

4 NEWBERG ON CLASS ACTIONS § 11:53 ............................................................................ 23

Manual For Complex Litigation § 30.212 (4th ed. 2004) ................................................. 24

1    **I.    INTRODUCTION**

2    Plaintiffs Thomas Fan, Matthew Kimoto, and Clinton Brown (collectively, "Plaintiffs"), by

3    and through the undersigned counsel, respectfully submit this memorandum in support of

4    Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement.  The Settlement

5    Agreement (the "Settlement" or "Settl.")[1] and its exhibits are attached to the Declaration of Stefan

6    Bogdanovich (the "Bogdanovich Decl." or "Declaration"), filed herewith.

7    Plaintiffs allege Defendant Dapper Labs, Inc., using intellectual property assets from NBA

8    Properties, Inc., (collectively, "Defendants" and together with Plaintiffs the "Parties") developed

9    NBA Top Shot, an online trading platform where consumers can buy and sell Moments, Non-

10    Fungible Tokens ("NFTs") of professional basketball "players performing highlight-worthy plays"

11    using a private blockchain technology. *See* Third Amended Complaint, ECF No. 89 ("Complaint")

12    ¶ 2. When consumers create accounts with NBA Top Shot, they can create their own username or

13    receive "random and anonymous usernames," that are used to record their ownership of the video

14    clips.[2] *Id.* ¶ 3. The NBA Top Shot's private blockchain displays which anonymous users own

15    which NFTs. *Id.* "One of the main appeals of blockchain technology like this is that it allows

16    anyone to verify the ownership of an asset while simultaneously keeping the owner's identity

17    anonymous." *Id.* Plaintiffs allege that Defendants did not keep owners' identities anonymous. *Id.* ¶

18    4. Instead, Plaintiffs allege Defendants installed the Meta Tracking Pixel on nbatopshot.com, and

19    thus disclosed the records of NFTs consumers purchased, along with their Facebook IDs, to an

20    unrelated third party completely separate from the blockchain. *Id.* Plaintiffs brought this case on

21    behalf of themselves and other consumers, alleging Defendants violated the Video Protection

22    Privacy Act ("VPPA") and its California state law analogue, Cal. Civil Code § 1799.3. *Id.* ¶ 5.

23    After nearly two years of hard-fought litigation, a review of over twenty thousand

24    documents, seven depositions, multiple rounds of third-party discovery, and months of

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement.  *See* Bogdanovich Decl. Ex. 1.

[2] Defendants do not agree that Moments qualify as "videos" for the purposes of the Video Protection Privacy Act.  Use of the term "video" throughout this motion does not constitute agreement that NFTs are videos.

negotiations, the Parties have reached a settlement that provides real and substantial monetary benefit to the Class. Defendants have agreed to pay $7,050,000 into a non-reversionary settlement fund from which each of the approximately 1,221,288 potential Settlement Class Members will be entitled to a *pro rata* share. If approved, and assuming a 3% claims rate, which is typical for Meta Pixel VPPA settlements[3], it will result in a cash recovery per claim (including administrative costs, attorneys fees and other expenses) of $192.42.

This compares favorably with finally approved Meta Pixel common-fund settlements:

| Case | Cash Settlement Amount | Potential Class Members | **Claims Rate per Claimant** | **Cash Recovery Per Claim at 3% claim rate** |
|---|---|---|---|---|
| *Ambrose v. Boston Globe, Inc.*, Case No. 22-cv-10195-RGS (D. Mass.)[4] | $4,000,000 | 516,125 | $7.70 | $258.33 |
| ***Fan v. NBA Properties, Inc.*, Case No. 23-cv-5069-SI (N.D. Cal.)** | **$7,050,000** | **1,221,288** | **$5.77** | **$192.42** |
| *Guida v. Gaia, Inc.*, Case No. 22-cv-2350-GPG (D. Colo.) | $2,000,000 | 478,000 | $4.18 | $139.39 |
| *Fiorentino v. FloSports, Inc.*, Case No. 22-cv-11502-AK (D. Mass) | $2,625,000 | 639,000 | $4.10 | $136.93 |
| *Vela v. AMC Networks, Inc.*, Case No. 23-cv-2524-ALC (S.D.N.Y.) | $8,300,000 | 7,300,000 | $1.14 | $37.90 |
| *Stark v. Patreon, Inc.*, Case No. 22-cv-03131-JCS (N.D. Cal.) | $7,250,000 | 8,097,092 | $0.89 | $29.85 |
| *Beltran v. Sony Pictures* | $16,000,000 | 19,581,200 | $0.81 | $27.23 |

---

[3] Claims rates for such cases have ranged from 1.3 to 3.3 percent, given that not everyone who holds an account with the video service provider necessarily has a Facebook account and submits a claim which provides this information. *See Stark, et al. v. Patreon, Inc*., Case No. 3:22-cv-03131-JCS (N.D. Cal. 2024), ECF No. 197 (1.3% claims rate); *Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502 (D. Mass 2022), ECF No. 72 (3.3% claims rate); *Ambrose v. Boston Globe Media Partners, LLC*, Case No. 1:22-cv-10195-RGS (D. Mass 2022), ECF Nos. 63, 67 (estimated 2.6% claims rate); *Beltran, Jr., et al. v. Sony Pictures Entertainment Inc.*, Case No. 1:22-cv-04858 (N.D. Il. 2022), ECF No. 53 (1.75% claims rate).

[4] Class counsel in this case was also Bursor & Fisher P.A.

| *Entertainment, Inc.*, Case No. 22-cv-4858-SLE (N.D. Ill.) | | | | |
|---|---|---|---|---|

As with any class action, the Settlement is subject initially to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiffs ask the Court to enter an order in the form of the Proposed Preliminary Approval Order, which is attached hereto. That Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class, designate Plaintiffs as Class Representatives, and appoint Bursor & Fisher, P.A. as Class Counsel; (3) appoint Epiq Systems, Inc. ("Epiq") as the Settlement Administrator and establish procedures for giving notice to members of the Class; (4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a date, time, and place for a final approval hearing.

Class certification for purposes of settlement is appropriate under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).  The proposed Class is so numerous that the joinder of all Class Members is impracticable; there are questions of law or fact common to the proposed Class; the proposed Class Representatives' claims are typical of those of the Class; and the proposed Class Representatives will fairly and adequately protect the interests of the proposed Class.  In addition, common issues of law and fact predominate over any questions affecting only individual members and a class action as proposed here is superior to other available methods for the fair and efficient adjudication of the controversy.

The Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement.  Plaintiffs, by and through their counsel, have conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Declaration. While Plaintiffs believe they could secure class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding the VPPA, and Defendants are prepared to vigorously defend this case and oppose class certification.  The terms of

the Settlement provide Settlement Class Members with meaningful compensation and meet or exceed the applicable standards of fairness.  Accordingly, the Court should preliminarily approve the Settlement so that the Settlement Class Members can receive notice of their rights, and the claims administration process may begin.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On October 3, 2023, Plaintiff Thomas Fan filed this putative class action alleging that Defendants disclosed NBA Top Shot users' personally identifiable information ("PII") to Meta Platforms, Inc. without proper consent, in violation of the VPPA and its California state law corollary, California Civil Code §1799.3. ECF No. 1. After nearly two years and hundreds of hours of hard-fought litigation, the Parties put down their pens and agreed to settle the dispute.

The Parties engaged in substantial motion practice, including three fully briefed pleading motions: Dapper Lab's Inc.'s motion to dismiss itself form the action, NBA Properties Inc.'s second motion to dismiss itself from the action, and Named Plaintiff Fan's request to amend the complaint to add two new class representatives, Matthew Kimoto and Clinton Brown. ECF Nos. 25, 50, 89. The parties engaged in months of fulsome discovery. Plaintiffs reviewed over twenty thousand documents produced by Defendants. All three Plaintiffs were deposed, and had completed their document production. Bogdanovich Decl., ¶ 3. Two Rule 30(b)(6) witnesses for both Defendants were also deposed, along with three fact witnesses in their personal capacity.  *Id*. Meta had also completed its document production and produced two declarations. *Id*. ¶ 4. Plaintiffs had begun drafting their motions for class certification and summary judgment. *Id*. ¶ 5.

In short, both sides had a clear understanding of the strengths and weaknesses of their case. With the fact-discovery cut-off approaching, on May 27, 2025, the Parties, through their respective counsel, participated in a full-day mediation with former United States District Judge Wayne R. Andersen, formerly of the Northern District of Illinois. *Id*. ¶ 5.  Judge Andersen had previously mediated the *AMC Networks* and *Flo Sports* Meta Pixel VPPA settlements listed above. *Id*.

While an agreement was not reached at the mediation, the Parties continued to engage in arms-length negotiations facilitated by Judge Andersen. ECF No. 105. On June 6, 2025, the Parties notified the Court that they had reached a settlement in principle. ECF No. 106. After further

negotiations, the parties executed a Term Sheet on July 14, 2025 resolving the case.

## III.    TERMS OF THE SETTLEMENT

The key terms of the settlement and its administration are summarized below, in accordance with the Northern District of California's Procedural Guidelines for Class Action Settlements.

### A.    Class Definition

The proposed Settlement Class consists of "all individuals in the United States who had NBA Top Shot accounts and Facebook accounts from June 15, 2020 to January 30, 2025." Settl. ¶ 1.35. Excluded from the Class is any entity in which Defendants have a controlling interest, and officers, directors, agents, attorneys, and employees of Defendants. *Id.* The only modification between this definition and the definition used in the operative Third Amended Complaint is it removes the qualifier "and viewed or purchased video clips on nbatopshot.com during the statutory period." TAC ¶ 85. As a practical matter, the nbatopshot.com website is a platform to buy, sell, and anonymously display video clips, and nothing else, so this qualifier was largely unnecessary, as virtually everyone who had an NBA Top Shot account would have thus either viewed or purchased a video. The purpose of this modification was to make it easier for Settlement Class Members to understand whether they qualify, and reduce the risk of individuals not filing a claim because they misread the class definition. According to Defendants, there are 1,221,288 people who had NBA Top Shot accounts in the United States. Settl. ¶ 6.2.

Of those NBA Top Shot account holders, only those who had Facebook account, and used Facebook on the same browser as the browser they used to visit NBA Top Shot would have had their unencrypted Facebook ID disclosed. In *Stark v. Patreon*, another Plaintiffs' counsel in a Meta Pixel case in this district "estimate[d] that about 20%" of all account holders of a video streaming service qualified "[b]ased on publicly available data regarding web browsing habits, use of cookie blockers or private browsing, and Facebook login rates." No. 22-CV-03131-JCS, 2025 WL 1592736, at *4 (N.D. Cal. June 5, 2025). Assuming this estimate is accurate, approximately 244,258 NBA Top shot account holders here would qualify.

### B.    The Claims to be Released

In exchange for the relief laid out in the Settlement, Defendants and each of their related

and affiliated entities as well as all "Released Parties," as defined at Settl. ¶ 1.29, will receive a full release of any and all claims "that were brought or could have been brought in the Action relating to the Meta Pixel on nbatopshot.com." *Id.* ¶ 1.28.

**C.    The Settlement Benefits**

Under the Settlement, Defendants will pay or cause to be paid $7,050,000 into a non-reversionary settlement fund (the "Settlement Fund") and agrees that each class member may file a claim that will entitle him/her to a *pro rata* cash payment from the Settlement Fund.  Settl. ¶ 2.1(a)-(b).

Additionally, Defendants agree as part of the Settlement to cease operation of the Meta Tracking Pixel on any pages on its Website, unless and until the VPPA or California Civil Code §1799.3 are amended, repealed, or otherwise invalidated unless Defendants are otherwise in compliance with those laws. *Id.* ¶ 2.2

**D.    Other Cases Affected by the Settlement**

The Parties are unaware of any other cases that may be affected by the Settlement.[5]

**E.    Allocations and Payments from the Settlement Fund**

**1.    The Settlement Fund**

Under the Settlement, Defendants will pay or cause to be paid $7,050,000 into a non-reversionary settlement fund (the "Settlement Fund") and agree that each class member may file a claim that will entitle him/her to a *pro rata* cash payment from the Settlement Fund.  Settl. ¶ 2.1(a)-(b).  The Settlement Fund will be used to pay all approved claims by Settlement Class Members, Notice and Settlement Administration Costs, taxes owed by the Settlement Fund, any Court-approved service award to Plaintiffs, and any Court-approved Attorneys' Fees and Expense Award.

---

[5] A settlement has also been reached in *Ohebshalom v. Dapper Labs, Inc.*, Index Number 615987/2025 (N.Y. Sup. Ct.), which involves Dapper's use of *other* tracking technologies, (such as the TikTok, Snapchat, X, and Microsoft Bing Pixels)—not including the Meta Pixel—on the NBA Top Shot website, as well as *all* tracking pixels on other websites like NFL All Day, Disney Pinnacle, UFC Strike and La Liga Golazos. The *Ohebshalom* settlement will not impact the settlement in this case.

1  Settl. ¶ 1.37.  The Settlement Amount reverts to Defendants only if the Settlement Agreement is

2  voided, cancelled, or terminated.  Settl. ¶ 9.3

3         The Settlement Fund will be distributed *pro rata*.  Settl. ¶ 2.1(b).  Any funds remaining

4  after the 180-day deadline for distribution of Cash Awards will be distributed *pro rata*, after

5  deducting any necessary settlement administration expenses, to all Settlement Class Members who

6  claimed their payments. Settl. ¶ 2.1(d).  Should a secondary distribution be infeasible, any

7  unclaimed funds will be distributed *cy pres* to the Electronic Frontier Foundation ("EFF"), a non-

8  sectarian, not-for-profit organization.  Settl. ¶ 2.1(e).  EFF bears a close relationship to the subject

9  matter of this lawsuit, focusing on law and policy relating to the individual rights on the internet.

10 Neither Plaintiffs nor their counsel have a relationship with EFF. Bogdanovich Decl. ¶ 9.

### 2. Service Awards

12        The Settlement would not have been possible without the time and effort of the named

13 Plaintiffs.  Accordingly, Plaintiffs' counsel will ask that the Court award each Named Plaintiff a

14 $10,000 Service Award to be payable from the Settlement Fund.  Settl. ¶ 8.3.

15        Plaintiffs have been active participants in the litigation—above and beyond the typical

16 consumer class action case. Bogdanovich Decl., ¶ 10. They investigated the matter prior to and

17 after retaining their attorneys, participated in the plaintiff vetting process implemented by

18 Plaintiffs' counsel, reviewed and approved the Complaint, kept in contact with counsel to monitor

19 the progress of the litigation, including answering multiple sets of discovery requests and produced

20 over a thousand pages of documents. *Id*. They learned how to use their browser developer tools to

21 determine their Facebook ID numbers and how to download their off-Facebook activity reports. *Id*.

22 All three Plaintiffs were also deposed by Defendants. In Plaintiff Thomas Fan's case, his

23 deposition took place over a weekend because of his inability to take time off from work. *Id*. In

24 advance of all their depositions, they spent substantial time reviewing their discovery and

25 communicating with counsel. *Id*. They also reviewed and communicated with counsel regarding

26 the Settlement Agreement and its exhibits. *Id*.

### 3. Attorneys' Fees and Expense Award

28        As part of the Settlement, Class Counsel shall apply to the Court for payment of an award

1   of attorneys' fees, paid out of the Settlement Fund, of no more than one-third of the Settlement

2   Fund (*i.e.*, $2,350,000.00), inclusive of reimbursement of Class Counsel's costs and expenses

3   incurred on behalf of the Plaintiff and the Class.  Settl. ¶ 8.1.  The unaudited lodestar invested in

4   this case by Plaintiffs' Counsel as of July 2025 is approximately $1,000,000.  *See* Bogdanovich

5   Decl. ¶8. If this lodestar remains unchanged (which is unlikely), the proposed attorneys' fee would

6   reflect a multiplier of 2.35. *Id.* The Proposed Preliminary Approval Order provides that Class

7   Counsel will file a motion for payment of attorneys' fees and expenses prior to the Final Approval

8   Hearing and at the same time as the Opt-Out and Objection Deadline.  Class Members and/or

9   Defendant will have the opportunity to comment on or object to the fee petition under Rule 23(h),

10  consistent with Ninth Circuit authority.  *See Mercury Interactive Corp. Secs. Litig. v. Mercury*

11  *Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

   **F.      Settlement Administration**

12       The Parties propose that Epiq, an experienced and reputable national class action

13  administrator, serve as Settlement Administrator to provide notice; administer the claim process;

14  distribute payments; and provide other services necessary to implement the Settlement.  Settl. ¶

15  1.33. Class Counsel selected the Settlement Administrator after soliciting competing bids from

16  three potential claims administrators, all of whom submitted responses. Bogdanovich Decl. ¶ 6.

17  Email notice and a settlement website were proposed by each potential administrator. *Id.*  Over the

18  past two years, Class Counsel has utilized Epiq as a settlement administrator for new engagements

19  several times.  *Id.*  Plaintiffs' counsel have used Epiq 34 times in the past. Epiq has administered

20  several other VPPA class actions, including *Ambrose v. Boston Globe*, Case No. 22-cv-10195-

21  RGS, ECF No. 67 (D. Mass), and its bid was the lowest. *Id*.  Proposed claims payment methods

22  included popular digital consumer platforms (PayPal, Venmo, Amazon, Target, Zelle, Digital

23  Disbursements, etc.), a virtual debit card, and mailed settlement checks.

24       Epiq will serve as a data processor and act only at the direction of the designated data

25  controller or of the Court. Declaration of Camaron Azari, ¶ 12. Epiq will not utilize or perform

26  other procedures on personal data provided or obtained as part of services as Settlement

27  Administrator. *Id*.  Epiq will not use any information provided by Settlement Class Members for

any other purpose than the administration of this Action. *Id.* Its data centers are defended by multi-layered, physical access security, including formal ID and prior approval before access is granted, closed-circuit television ("CCTV"), alarms, biometric devices, and security guards, 24 hours per day, 7 days per week. *Id.* ¶ 14. It also maintains insurance coverage in case of errors. *Id.* ¶ 11.

Class Counsel estimates a claim rate of 3% based on the comparable VPPA settlements discussed above. Epiq anticipates a total of $125,000 to $150,000 in administrative costs. This amount is reasonable given that it only accounts for 1.77% to 2.12% of the total settlement value. The costs are to be paid out from the total settlement value.

**G.    The Notice Plan**

In the event the Court preliminarily approves the Settlement, no later than the fourteen (14) days after entry of the Preliminary Approval order, "the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit B to all Settlement Class Members for whom a valid email address is in the Class List." Settl. ¶ 4.1(b).

Both thirty (30) days prior to the Claims Deadline and seven (7) days prior to the Claims Deadline, the Settlement Administrator shall again send Notice via email substantially in the form attached as Exhibit B to the **Settlement Agreement** (with minor, non-material modifications to indicate that it is a reminder email rather than an initial notice), along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available in the Class List. Settl. ¶ 4.1(c).

Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website which shall be administered and maintained by the Settlement Administrator and shall include the ability to file Claim Forms online. *Id.* ¶ 4.1(d). Notice provided on the Settlement Website shall be substantially in the form of Exhibit C to the **Settlement Agreement**.

Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall serve the Attorneys General of each U.S. State in which Settlement Class members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law. *Id.* ¶ 4.1(e).

The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. *Id.* ¶ 4.2. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendants' Counsel. *Id.*

## IV.    PRELIMINARY APPROVAL IS APPROPRIATE

"The Ninth Circuit maintains a strong judicial policy that favors the settlement of class actions." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (internal quotations and citation omitted). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations and citation omitted). "[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation[.]" *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (affirming district court's certification of class settlement); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).

1   "At the preliminary approval stage, the settlement need only be potentially fair." *Uschold*

2   *v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (internal quotations and

3   citation omitted); *see also Class Plaintiffs*, 955 F.2d at 1276 ("Although Rule 23(e) is silent

4   respecting the standard by which a proposed settlement is to be evaluated, the "universally applied

5   standard is whether the settlement is fundamentally fair, adequate and reasonable.").  Preliminary

6   approval is thus appropriate if "the proposed settlement appears to be the product of serious,

7   informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

8   preferential treatment to class representatives or segments of the class, and falls within the range of

9   possible approval." *Uschold*, 333 F.R.D. at 169.

10   **A.    The Proposed Settlement Is Fair, Reasonable, and Adequate**

11   Rule 23(e) provides that "the claims, issues, or defenses of a certified class may be settled

12   … only with the court's approval."  Fed. R. Civ. P. 23(e).  "The parties must provide the court with

13   information sufficient to enable it to determine whether to give notice of the proposal to the class,"

14   and if, upon reviewing that information, the court concludes that is likely "to: (i) approve the

15   proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal,"

16   then the court "must direct notice in a reasonable manner to all class members who would be

17   bound by the proposal." *Id.*  This is the "preliminary approval" decision that Plaintiffs now ask the

18   Court to make.  *See* Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment.

19   "The primary concern of [Rule 23(e)] is the protection of th[e] Class Members, including

20   the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."

21   *Officers for Justice*, 688 F.2d at 624.  The Court may approve a settlement agreement "after a

22   hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In

23   analyzing a class settlement, courts in the Ninth Circuit examine

24         a balancing of several factors which may include, among others,
25         some or all of the following: the strength of plaintiffs' case; the risk,
         expense, complexity, and likely duration of further litigation; the
26         risk of maintaining class action status throughout the trial; the
         amount offered in settlement; the extent of discovery completed, and
27         the stage of the proceedings; the experience and views of counsel;
         the presence of a governmental participant; and the reaction of the
28         class members to the proposed settlement.

1    *Linney*, 151 F.3d at 1242.

2         Approval of a class action settlement requires a two-step process: preliminary approval

3    followed by a later, final approval.  *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2

4    (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages.").  At

5    the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine

6    whether they are within a range of possible judicial approval."  *Wright v. Linkus Enters., Inc.*, 259

7    F.R.D. 468, 472 (E.D. Cal. 2009).  Although "[c]loser scrutiny is reserved for the final approval

8    hearing[,]"  *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011), "the

9    showing at the preliminary approval stage—given the amount of time, money and resources

10   involved in, for example, sending out new class notices—should be good enough for final

11   approval."  *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

12            **1.    The Strength of Plaintiff's Case**

13        Given the heavy obstacles and inherent risks Plaintiffs face with respect to their claims, the

14   substantial benefits that the Settlement provides favor preliminary approval of the Settlement.

15   While Plaintiffs believe they would likely prevail on their claims and obtain summary judgment in

16   their favor, there are risks.

17        Plaintiffs are only aware of a single VPPA case where a contested motion for class

18   certification case been granted. *See Jancik v. WebMD LLC*, 2025 WL 560705, at *1 (N.D. Ga. Feb.

19   20, 2025). Bogdanovich Decl. ¶ 18.  Two other courts denied motions for class certification and

20   granted summary judgment in favor of defendants. *In re Hulu Privacy Litig.*, 2014 WL 2758598

21   (N.D. Cal. June 17, 2014) (denying class certification of VPPA claim); *Therrien v. Hearst*

22   *Television, Inc.*, 2025 WL 509454, at *1 (D. Mass. Feb. 14, 2025) (denying class certification of

23   VPPA claim); *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary

24   judgment for defendant on VPPA claim); *Therrien v. Hearst Television, Inc.*, 2025 WL 1208535, at

25   *4 (D. Mass. Apr. 25, 2025); *see also* Bogdanovich Decl. ¶ 18. While Plaintiffs have obtained

26   written discovery and testimony they believe is sufficient to certify a class and establish that

27   Defendants *knowingly* disclosed Class Member's PII to Meta, they are also keenly aware that this

28   may not be enough.

1    Additionally, Defendants have maintained throughout the litigation that Plaintiffs all

2    consented to their privacy policy through various "sign-in wrap" agreements.  While Plaintiffs

3    maintain that Defendants' disclosures were not reasonably conspicuous under Ninth-Circuit case

4    law, *see, e.g.*, *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 883 (N.D. Cal. 2025) (rejecting consent

5    argument in a video privacy case where "Home Page did not give Plaintiffs reasonably

6    conspicuous notice of the privacy policy"), and this Court expressed that it was "skeptical of

7    defendants' contention that [their] policies satisfy the VPPA's 'distinct and separate' requirement,"

8    Defendants are represented by qualified counsel that has prevailed on this argument in the past.

9    *Lakes v. Ubisoft, Inc.*, --- F. Supp.3d----, No. 24-CV-06943-TLT, 2025 WL 1036639, at *8 (N.D.

10    Cal. Apr. 2, 2025), appeal filed, No. 25-2857 (9th Cir.).

11    Thus, even if the facts are uncontroverted, judicial opinions are not. As this Court has

12    recently noted, the case law "is developing rapidly as courts are being asked to apply the VPPA to

13    new technology." *Ballard v. Insomniac Holdings, LLC*, 2025 WL 1696558, at *6 (N.D. Cal. June

14    17, 2025) (Illston, J.). Indeed, circuits are split on who is a consumer, *see id.*, or what the standard

15    for PII is, *compare, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) *with Yershov v.*

16    *Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). Even among courts that

17    apply the Ninth Circuit's "'ordinary person' standard," for PII, courts are further divided  "because

18    there are different ways to interpret the standard." *Manza v. Pesi, Inc.*, --- F. Supp. 3d ----, 2025

19    WL 1445762, at *8, n.3 (W.D. Wis. May 20, 2025). Most courts, including the Ninth Circuit,

20    appear to focus on whether information disclosed independently enables anyone to identify a

21    person using "modern technology," *Eichenberger*, 876 F.3d at 986, whereas some outlier decisions

22    take it to refer to the technical sophistication of the "ordinary person," such that virtually any

23    VPPA violation in the 21st century would not qualify because in their view, the "ordinary person"

24    apparently lacks the intellectual curiosity ask "ChatGPT" how to use their browser tools or

25    "translate the code." *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *3 (2d

26    Cir. June 20, 2025) (unpublished).

27    And even among the vast majority of courts that recognize Facebook IDs as meeting the

28    ordinary person standard, courts are further split on whether PII is "categorical." *Compare Lee v.*

1  *Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 263 (S.D.N.Y. 2025) (holding that a Facebook ID

2  is "categorically" PII, just as a name is categorically PII, even if it is commonplace name like John

3  Smith, because "Congress did not intend for there to be a trial on the merits in each case regarding

4  how distinctive a name is or how recognizable a person is from her picture") *with Ghanaat v.*

5  *Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (appearing to condition a

6  Facebook ID's status as being PII only whether the corresponding "Facebook page[] contain[s] any

7  personal information, such as their names or email addresses.").

8          Defendants' consent arguments also raise their own can of worms. While Plaintiffs

9  maintain that Defendants' privacy policy was not reasonably conspicuous, case law in this regard

10  "appl[ies] largely subjective criteria that, at times, results in inconsistent conclusions." *Sellers v.*

11  *JustAnswer LLC,* 73 Cal. App. 5th 444, 471 (2021). And as noted, while most Courts do not seem

12  to believe a standalone privacy policy does not satisfy the VPPA's separate and distinct

13  requirement, *see Fan*, 2024 WL 1297643, at *3 (citing case), *and see* ECF No. 30 at 14, n.6

14  (collecting more cases), at least one court disagrees. *Lakes*, 2025 WL 1036639, at *8, *appeal filed*,

15  No. 25-2857 (9th Cir.).

16          Needless to say, "controlling law [can] change." *Ballard,* 2025 WL 1696558, at *6.

17          As such, "settlement is favored where, as here, significant procedural hurdles remain,

18  including class certification and an anticipated appeal." *Ching v. Siemens Indus., Inc.*, 2014 WL

19  2926210, at *4 (N.D. Cal. June 27, 2014); *see id.* ("Avoiding such unnecessary and unwarranted

20  expenditure of resources and time would benefit all parties, as well as the Court.").  Even if

21  Plaintiffs prevailed at class certification, Defendants intended to file a motion for summary

22  judgment raising numerous arguments including that Plaintiffs and the Class Members consented

23  to the sharing of their information by agreeing to Defendants' privacy polices and terms of use.

24  Accordingly, to say Plaintiffs' claims carry risk is an understatement.  And, while Plaintiffs believe

25  their case is different and that they can buck this trend, when considering the "vagaries of

26  litigation," the "significance of immediate recovery by way of the [proposed] compromise" is

27  much preferable "to the mere possibility of relief in the future, after protracted and expensive

28  litigation."  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

Cal. 2004). In such circumstances, courts have held it is "proper to take the bird in hand instead of a prospective flock in the bush." *Id.* (internal quotations and citation omitted).

Indeed, Moreover, approval would allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. In short, the result here is exceptional in comparison to other VPPA cases—or, at the very least, is certainly fair, reasonable, and adequate—and warrants Court approval.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. The Parties would have to undergo class certification, trial, and an anticipated appeal. Bogdanovich Decl. ¶ 18. As courts have noted, the "risk, expense, complexity, and likely duration of further litigation" are "probable costs, in both time and money, of continued litigation[,]" that the Settlement would allow the Parties to avoid. *Ching*, 2014 WL 2926210, at *4. As such, the immediate and considerable relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a long and drawn-out class certification, trial, and appeal. Continued protracted and expensive litigation is not in the interest of any of the Parties or Settlement Class members.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

As noted above, to date, there has only been a single VPPA case where a contested motion for class certification case been granted. *See Jancik v. WebMD LLC*, 2025 WL 560705, at *1 (N.D. Ga. Feb. 20, 2025). Bogdanovich Decl. ¶ 18. And given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on the merits as well as on class certification. *Id.* Thus, this factor weighs in favor of granting preliminary approval.

### 4. The Amount Offered in Settlement

The Settlement in this case provides substantial material benefits to the Settlement Class: an over $7 million Settlement fund from which all Settlement Class Members are entitled to a *pro rata*

share.  Settl. ¶ 2.1(a)-(b).   Discovery has shown there were 1,221,288 potential Class Members. This compares favorably with other privacy settlements under the VPPA or its state-law analogs.

For example, in *Stark et al. v. Patreon, Inc.*, Judge Joseph C. Spero of this Court recently approved a $7.25 million common fund class settlement in a case alleging VPPA claims against Patreon.  *Stark*, 2025 WL 1592736. Judge Spero lauded "Class Counsel [as] ha[ving] achieved excellent results, obtaining a settlement that will result in awards to all class members who filed a claim of approximately $42."  2025 WL 1592736, at *10.

The $7,050,000 settlement here is nearly the same size as the *Stark* settlement, but it punches well above its weight. In *Stark*, the $7,250,000 fund was divvied up amongst "**8,097,092** potential Class Members." 2025 WL 1592736, at *3. Here, the $7,050,000 fund will be divvied up amongst **1,221,288** potential class members. So, for an apples-to-apples comparison, this settlement here is expected to get claimants more than six times as much money.

Accordingly, this factor weighs heavily in favor of preliminary approval.

### 5.    The Extent of Discovery Completed and the State of the Proceedings

However, such a settlement did not fall out of the sky. Plaintiffs needed to fight for it across nearly two years of litigation and substantial discovery.

Plaintiffs reviewed over twenty thousand documents, including emails, chat messages, PowerPoint presentations, and material concerning the programing of the Meta Pixel on the website, the tracking of the effectiveness of Defendant's ad campaigns, and the relationship between Defendants. Bogdanovich Decl., ¶ 3. A Rule 30(b)(6) witnesses for Dapper and another for the NBA were both deposed. *Id*. ¶ 3. Three of Defendants' fact witnesses also testified in their personal capacity: one about the implementation of the Meta Pixel, targeted advertising, and audience measurement, while another two testified about the NBA's relationships with Dapper. *Id*.

All three Plaintiffs were deposed and had completed their document production. *Id*.

Meta had also produced spreadsheets for all three Plaintiffs—*including Thomas Fan*—showing hundreds of instances where Plaintiffs had either viewed or purchased moments, along with the URLs to those specific videos. *Id*. ¶ 4.

In other words, the Parties had all but completed discovery and Plaintiffs had begun drafting their motions for class certification and summary judgment.

Thus the Parties had sufficient information to assess the strengths and weaknesses of their claims and defenses in reaching the Settlement. Bogdanovich Decl. ¶ 5. Accordingly, this factor also weighs in favor of preliminary approval. *See Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted).

### 6. The Experience and Views of Counsel

Plaintiffs are represented by attorneys who have substantial experience serving as counsel in numerous complex actions, generally, and VPPA litigation in particular. Bogdanovich Decl. ¶¶ 13-15. Proposed Class counsel believe that the proposed Settlement is in the best interest of the Settlement Class members because the Settlement Class members will be provided an immediate payment instead of having to wait for lengthy litigation and any subsequent appeals to run their course. As such, Proposed Class Counsel fully endorse the Settlement as fair, reasonable, adequate, and in the best interests of the Class. *Id.* ¶ 12. Further, given proposed Class Counsel's extensive experience litigating similar class action cases in federal and state courts across the country, including other cases under the VPPA and its state-law analogs, this factor also weighs in favor of granting preliminary approval. *See id.* ¶ 13 *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations omitted).

### 7. The Presence of a Governmental Participant

No governmental agency is involved in this litigation, but the Attorney General of the United States and Attorneys General of each State will be notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections. Settl. ¶ 4.1(f).

### 8. The Reaction of the Class Members to the Proposed Settlement

The Settlement Class has yet to be notified of the Settlement and given an opportunity to

1   object, so it is premature to assess this factor.  Before the Final Approval Hearing, the Court will

2   receive and be able to review all objections or other comments received from Settlement Class

3   Members, along with a full accounting of all requests for exclusion.

### 9.    The Settlement Was the Product of Arm's-Length Negotiations

6       The Court should also be satisfied that "the settlement is not the product of collusion among

7   the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th

8   Cir. 2011).  Here, there are no indicia of collusion. When negotiations began, Plaintiffs had a clear

9   view of the strengths and weaknesses of their case and were in a strong position to make an

10  informed decision regarding the reasonableness of a potential settlement.  The Parties engaged in

11  extensive arm's length negotiations spanning several months.  Bogdanovich Decl. ¶ 5.  There is no

12  indication of collusion or fraud in the settlement negotiations, and none exists.

### B.    Conditional Certification of the Rule 23 Class Is Appropriate

14      Rule 23(a) imposes four prerequisites for a class action: (1) the class is so numerous that a

15  joinder of all members is impracticable (numerosity); (2) there are questions of law or fact

16  common to the class (commonality); (3) the claims or defenses of the representative parties are

17  typical of the claims or defenses of the class (typicality); and (4) the representative parties will

18  fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *United*

19  *Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-*

20  *CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

21      Under Rule 23(b), a plaintiff must show (1) that common factual and legal issues

22  predominate over individual questions and (2) that a class action is the best method to resolve the

23  class claims.  Fed. R. Civ. P. 23(b)(3).  There are several relevant factors to consider during this

24  analysis: (1) the class members' interest in individually controlling the prosecution or defense of

25  separate actions, (2) the extent and nature of any litigation concerning the controversy already

26  begun by or against class members, (3) the desirability or undesirability of concentrating the

27  litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class

28  action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

The Settlement Class meets the requirements of Rule 23 and, accordingly, the Court should direct notice informing Settlement Class Members that the Court "likely will be able to" certify the Settlement Class for purposes of judgment on the appeal. Fed. R. Civ. P. 23(e)(1)(B). Notably, "[i]n deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019). Moreover, "Rule 23 provides courts the discretion to modify orders granting or denying class certification prior to a final judgment." *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 4215573, at *3 (N.D. Cal. Sept. 4, 2018) (citing Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment")); *accord Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("district courts are permitted to limit or modify class definitions to provide the necessary precision").

### 1. The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Here, the class size is estimated to have 1,221,288 potential members. Bogdanovich Decl. ¶ 7. In *Stark v. Patreon*, another Plaintiffs' counsel in a Meta Pixel case in this district "estimate[d] that about 20%" of all account holders of a video streaming service qualified "[b]ased on publicly available data regarding web browsing habits, use of cookie blockers or private browsing, and Facebook login rates." No. 22-CV-03131-JCS, 2025 WL 1592736, at *4 (N.D. Cal. June 5, 2025). Assuming this estimate is accurate, approximately 244,258 NBA Top shot account holders here would qualify. As such, joinder of all Settlement Class Members would be impractical, to say the least. Thus, the settlement class is sufficiently numerous.

### 2. There Are Common Questions of Law and Fact

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of

1    law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*,

2    574 U.S. 815 (2014) (emphasis and internal quotation marks omitted); *see also Mazza v. Am.*

3    *Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited

4    burden," stating that it "only requires a single significant question of law or fact"). Proof of

5    commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under

6    Rule 23(b)(3). *See Mazza*, 666 F.3d at 589.

7         Here, there are many common issues of law and fact that affect the Class uniformly and

8    satisfy the commonality requirement, including: whether Defendants collected Plaintiffs' and Class

9    Members' PII; whether Defendants unlawfully disclosed NBA Top Shot users' PII, including their

10   Moment purchase records, in violation of the VPPA; whether Defendants' disclosures were

11   committed knowingly; and whether Defendants disclosed Plaintiffs' and Class Members' PII

12   without consent.

### 3.    The Class Representative's Claims Are Typical of Those of Other Class Members

15         Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the

16   Class. The typicality requirement of Rule 23 is satisfied if the claim of the named class

17   representative arises "from the same course of conduct that gives rise to the claims of unnamed

18   Class Members to bring individual actions." *Thomas v. Baca*, 231 F.R.D. 397, 401 (C.D. Cal.

19   2005); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (describing standard for

20   typicality as permissive; claims typical if "reasonably co-extensive with those of absent Class

21   Members" although "they need not be substantially identical."). "The test of typicality is whether

22   other members have the same or similar injury, whether the action is based on conduct which is not

23   unique to the named plaintiffs, and whether other Class Members have been injured by the same

24   course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal

25   quotation marks and citation omitted).

26         Here, Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members

27   of the Class, watched and purchased videos on NBA Top Shot and had their PII collected and

28   disclosed by Defendants to a third party, Meta.

1

2

### 4. The Class Representative and Class Counsel Adequately Represent the Class Members

3   Rule 23(a)(4) permits certification of a class action only if "the representative parties will

4  fairly and adequately protect the interests of the class," which requires that (1) the named Plaintiffs

5  not have conflicts of interest with the proposed Class; and that (2) the named Plaintiffs be

6  represented by qualified and competent counsel. *See In re Volkswagen "Clean Diesel" Mktg.,*

7  *Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). "Adequate representation

8  depends on, among other factors, an absence of antagonism between representatives and absentees,

9  and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985; *see also*

10  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule

11  23(a) … serves to uncover conflicts of interest between named parties and the class they seek to

12  represent. A class representative must be part of the class and possess the same interest and suffer

13  the same injury as the class members.").

14   Plaintiffs and their counsel are adequate. First, the proposed Class Representatives do not

15  have any conflicts of interest with the absent Class Members, as their claims are coextensive with

16  those of the Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982).

17  Plaintiffs have been consistently involved in this litigation, providing valuable insight and useful

18  facts allowing Class Counsel to effectively litigate this action and negotiate this Settlement.

19  Further, Plaintiffs regularly communicated with Class Counsel regarding various issues pertaining

20  to this case and will continue to do so until the Settlement is approved, and its administration

21  completed. Bogdanovich Decl. ¶ 10.

22   Second, proposed Class Counsel are qualified and experienced in conducting class action

23  litigation, especially cases involving the VPPA. *Id.* ¶¶ 13-15. Proposed Class Counsel vigorously

24  prosecuted this action and will continue to do so through final approval. *Id.* ¶ 12. Proposed Class

25  Counsel identified and investigated the claims in this lawsuit and the underlying facts and

26  successfully negotiated this Settlement. Bogdanovich Decl. ¶ 3. *See also In re Emulex Corp. Sec.*

27  *Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (a court evaluating adequacy of representation may

28  examine "the attorneys' professional qualifications, skill, experience, and resources … [and] the

1    attorneys' demonstrated performance in the suit itself").

2        **5.      The Settlement Class Meets the Requirements of Rule**
3                **23(b)(3) Because Common Issues of Law and Fact**
                **Predominate**

4            In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

5    be satisfied.  Rule 23(b)(3) allows certification of a class if the Court finds that "questions of law or

6    fact common to class members predominate over any questions affecting only individual members,

7    and that a class action is superior to other available methods for fairly and efficiently adjudicating

8    the controversy."  Fed. R. Civ. P. 23(b)(3).  In the settlement context, the manageability criterion of

9    Rule 23(b)(3)(D) does not apply.  *Amchem*, 521 U.S. at 620.

10           "Common questions that yield common answers" and are "apt to drive the resolution of this

11   case" predominate over any individual issues.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345

12   (2011).  Here, Plaintiffs allege a common cause of action for the Settlement Class, namely, that

13   Defendants violated the VPPA by knowingly collecting and disseminating consumers' PII.

14           Finally, if the proposed Settlement Agreement is approved, there will be no need for a trial,

15   and thus manageability of the classes for trial is irrelevant.  *Amchem*, 521 U.S. at 620.  A class

16   settlement is superior to other methods of litigation where, as here, class treatment will promote

17   greater efficiency and no realistic alternative exists.  *See Local Joint Exec. Bd. Of*

18   *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001);

19   *accord Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).

20   **V.      THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED**

21           "The court must direct notice in a reasonable manner to all Class Members who would be

22   bound by the proposal."  Fed. R. Civ. P. 23(c)(1).  Federal Rule of Civil Procedure 23(c)(2)

23   requires the Court to "direct to Class Members the best notice that is practicable under the

24   circumstances, including individual notice to all members who can be identified through

25   reasonable effort," although actual notice is not required.  *Amchem*, 521 U.S. at 617; *Reppert v.*

26   *Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004); *Silber v. Mabon*, 18 F.3d 1449,

27   1454 (9th Cir. 1994).  "The standard for the adequacy of a settlement notice in a class action under

28

1    either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart*

2    *Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005).

3    The best practicable notice is that which is "reasonably calculated, under all the circumstances, to

4    apprise interested parties of the pendency of the action and afford them an opportunity to object."

5    *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see Trotsky v. Los Angeles*

6    *Fed. Sav. & Loan Ass'n.*, 48 Cal. App. 3d 134, 151-52 (1975) (same); *Wershba v. Apple Comput.,*

7    *Inc.*, 91 Cal. App. 4th 224, 252 (2001) ("As a general rule, class notice must strike a balance

8    between thoroughness and the need to avoid unduly complicating the content of the notice and

9    confusing Class Members.").  The notice should provide sufficient information to allow Class

10    Members to decide whether they should accept the benefits of the settlement, opt out and pursue

11    their own remedies, or object to its terms.  *See Wershba*, 91 Cal. App. 4th at 251-52.  "[N]otice is

12    adequate if it may be understood by the average class member." *Warner v. Toyota Motor Sales,*

13    *U.S.A.*, Inc., 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (quoting 4 NEWBERG ON CLASS

14    ACTIONS § 11:53, at p. 167 (4th ed. 2013)).

15          Subject to Court approval, the Parties have selected Epiq as the Settlement Administrator.

16    The notice program agreed to by the Parties and approved by Epiq includes emails to **all** Settlement

17    Class Members.  This represents the best notice practicable, and similar notice programs have been

18    approved by courts in this Circuit.  *Noll v. eBay, Inc.*, 309 F.R.D. 593, 605 (N.D. Cal. 2015)

19    (approving notice primarily by email); *Stone v. Howard Johnson Int'l, Inc.*, 2015 WL 13648551, at

20    *2 (C.D. Cal. June 15, 2015) (approving notice via post card and publication); *Abat v. Chase Bank*

21    *USA, N.A.*, 2011 WL 13130637, at *6 (C.D. Cal. July 11, 2011) (approving notice to class via

22    email and mail). The Notice (Exhibits B and C to the **Settlement Agreement**) is clear, precise,

23    informative, and meets all of the necessary standards.  It includes information such as the case

24    caption; a description of the Settlement Class; a detailed description of the Settlement's benefits

25    and how to obtain them; a description of the claims and the history of the litigation; a description of

26    the Settlement and the claims being released; the names of proposed Class Counsel; a statement of

27    the maximum amount of attorneys' fees that will be sought by proposed Class Counsel; the amount

28    proposed Class Counsel will seek for the Class Representative Service Awards; the Final Approval

1   Hearing date; a description of Settlement Class Members' opportunity to appear at the hearing; a

2   statement of the procedures and deadlines for requesting exclusion and filing objections to the

3   Settlement; and the manner in which to obtain further information. This satisfies the notice

4   required under Rule 23. *See Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal.

5   2011) ("A class action settlement notice 'is satisfactory if it generally describes the terms of the

6   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

7   forward and be heard.'") (citing *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th

8   Cir.2004)); s*ee also* Manual For Complex Litigation § 30.212 (4th ed. 2004) (Rule 23(c) notice

9   designed to be a summary of the litigation and settlement to apprise class members of the right and

10  opportunity to inspect the complete settlement documents, papers, and pleadings).

11       The Notice Plan was reviewed and analyzed to ensure it meets the requisite

12  due process requirements. Indeed, the program here is consistent with, and exceeds, other similar

13  court-approved notice plans, the requirements of FRCP 23(c)(2)(B), and the Federal Judicial

14  Center ("FJC") guidelines for adequate notice. As there is no alternative method of notice that

15  would be more practicable here or more likely to notify Settlement Class Members, the proposed

16  procedure for providing notice and the content of the Class Notice constitutes the best practicable

17  notice to Settlement Class Members and complies with the requirements of due process.

18  **VI.    THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A**

19  **FINAL APPROVAL HEARING**

20       In connection with preliminary approval, the Court must set a Final Approval Hearing date,

21  dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in

22  support of the Settlement. Plaintiffs propose the schedule set forth below.

23

24

25

26

27

28

| **Event** | **Deadline** |
| --- | --- |
| CAFA Notice pursuant to 28 U.S.C. § 1715(b) | Within 10 days of filing of motion for preliminary approval |
| Notice Date | 30 days after Preliminary Approval Granted |
| Applications for service award and Attorneys' Fees and Expenses | 45 days after Notice Date |

| Objection and Opt-Out Deadline | 60 days after Notice Date |
|---|---|
| Claims Deadline | 90 days after Notice Date |
| Final Approval Motion and response to any objections | 28 days before Final Approval Hearing |
| Deadline to submit notices of appearance at the Final Approval Hearing | 28 days before Final Approval Hearing |
| Claims Administrator submits declaration (1) stating the number of claims, requests for exclusion, and objections to date and (2) attesting that Notice was disseminated in a manner consistent with the Settlement Agreement or otherwise required by the Court. | 10 days before Final Approval Hearing |
| Final Approval Hearing | No earlier than 90 days after Notice |
| Award Issuance Date | Begins 14 days after Effective Date |

The Parties believe this proposed schedule will provide ample time and opportunity for Class Members to decide whether to request exclusion or object.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests that the Motion be granted and the Court enter an order substantially in the form attached hereto: (1) notifying Settlement Class Members that the Court is likely to certify the proposed Settlement Class; (2) preliminarily approving the proposed class action Settlement; (3) appointing Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel; (4) appointing the notice and Settlement Administrator; (5) approving the class Notice and related Settlement administration documents; and (6) approving the proposed class settlement administrative deadlines and procedures, including the proposed Final Approval Hearing date and procedures regarding objections, exclusions, and submitting Claim Forms.

Dated:  July 31, 2025              **BURSOR & FISHER, P.A**.

By:   */s/ Stefan Bogdanovich*
Stefan Bogdanovich

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
           sbogdanovich@bursor.com

*Attorneys for Plaintiffs*