**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
       sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FAN, MATTHEW KIMOTO, and CLINTON BROWN, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>NBA PROPERTIES, INC. and DAPPER LABS, INC.,<br><br>             Defendants. | Case No. 3:23-cv-05069-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        December 19, 2025<br>Time:       10:00 a.m.<br>Courtroom:  1<br>Judge:     Hon. Susan Illston |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2025, at 10:00 a.m., or another time the Court deems more convenient, in Courtroom 1 on the 17th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Susan Illston presiding, Plaintiffs Thomas Fan, Matthew Kimoto, and Clinton Brown (collectively, "Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to grant final approval of the proposed Class Action Settlement.

This Motion is made on the grounds that final approval of the proposed Settlement is proper, given that each requirement of Fed. R. Civ. P. 23(e) has been met.

This Motion is based on this Notice of Motion, Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and the accompanying Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan, the Declaration of Stefan Bogdanovich in Support of Plaintiffs' Motion for Preliminary Approval, ECF No. 107-1 (the "Bogdanovich Decl.") and the exhibits attached thereto, including the Settlement Agreement, ECF No. 107-1, Ex. 1, Plaintiffs' Supplemental Brief in Support of Preliminary Approval of Class Action Settlement, ECF No. 115, and any other written and oral arguments that may be presented to the Court.

Respectfully submitted,

Dated:  November 21, 2025

**BURSOR & FISHER, P.A.**

By:_____/s/Stefan Bogdanovich_____
　　　　　Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th floor
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
　　　　　sbogdanovich@bursor.com

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ........................................................1

ARGUMENT .......................................................................................................................2

I.      CERTIFICATION OF THE CLASS IS APPROPRIATE ......................................2

II.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE .....................3

     A.      The *Hanlon* Factors Weigh in Favor of Final Approval ...........................4

          1.      The Strength of Plaintiffs' Case ....................................................4

          2.      Risk of Continuing Litigation........................................................5

          3.      Risk of Maintaining Class Action Status.......................................5

          4.      Amount Offered in Settlement .......................................................6

          5.      The Extent of Discovery ................................................................8

          6.      Experience and Views of Counsel..................................................9

          7.      The Presence of a Governmental Participant .................................9

          8.      The Response of Class Members Has Been Overwhelmingly
              Positive .........................................................................................9

     B.      The Rule 23(e)(2) Factors Weigh in Favor of Final Approval...............10

          1.      The Class Representatives and Class Counsel Have
              Adequately Represented the Class (Fed. R. Civ. P.
              23(e)(2)(A)) ...............................................................................10

          2.      The Settlement Was Negotiated at Arm's Length.........................10

          3.      The Settlement Provides Adequate Relief to the Class ................11

          4.      The Settlement Treats All Class Members Equally .....................12

III.    THE NOTICE PLAN PROVIDED THE BEST NOTICE PRACTICABLE ......13

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarez v. Sirius XM Radio Inc.*,
   2020 WL 7314793 (C.D. Cal. July 15, 2020) ........................................................... 11, 12

*Arreola v. Shamrock Foods Co.*,
   2021 WL 4220630 (C.D. Cal. Sept. 16, 2021) ................................................................ 10

*Boyd v. Avanquest N. Am. Inc.*,
   2015 WL 4396137 (N.D. Cal. July 17, 2015) ................................................................. 13

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ................................................................................... 9

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ................................................................. 8

*Carter v. XPO Logistics, Inc.*,
   2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) .................................................................. 8

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F. 3d 566 (9th Cir. 2004) ......................................................................................... 13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 3

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,
   533 F. Supp. 3d 881 (N.D. Cal. 2020) .............................................................................. 9

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .................................................................. 4

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................. 4, 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 3, 14

*In re Apple Inc. Sec. Litig.*,
   2024 WL 3297079 (N.D. Cal. June 3, 2024) .................................................................... 5

*In re California Pizza Kitchen Data Breach Litig.*,
   129 F.4th 667 (9th Cir. 2025) ........................................................................................... 3

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................. 13

*In re Hulu Privacy Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................................. 6

*In re Hulu Privacy Litig.*,
  2014 WL 2758598 (N.D. Cal. June 17, 2014) .................................................. 5

*In re Linkedin User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) .................................................................... 1

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................... 8

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................. 6, 7

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................... 10

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................ 12

*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) .................................................... 5

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ................................................. 6

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................. 6

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .......................................................................... 7

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) .................................................. 5

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................................................ 7

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017) ........................................................... 9

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 5, 6, 7

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................... 4, 6

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................................ 11, 12, 13

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................................... 4, 5, 6

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020) ............................................................................................ 1

*Smith v. Apple, Inc.*,
   2025 WL 1266927 (N.D. Cal., May 1, 2025) ..................................................................... 1, 3

*Smith v. Keurig Green Mountain, Inc.*,
   2023 WL 2250264 (N.D. Cal., Feb. 27, 2023) ........................................................................ 3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................................... 2

*Therrien v. Hearst Television, Inc.*,
   2025 WL 509454 (D. Mass. Feb. 14, 2025) ........................................................................... 6

*Therrien v. Hearst Television, Inc.*,
   2025 WL 1208535 (D. Mass. Apr. 25, 2025) .......................................................................... 6

*Torchia v. W.W. Grainger, Inc.*,
   304 F.R.D. 256 (E.D. Cal. 2014) ............................................................................................ 9

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................................................................... 11

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022) .................................................................................................. 7

**STATUTES**

18 U.S.C. § 2710(c)(2)(A) .............................................................................................................. 7

28 U.S.C. § 1715 ....................................................................................................................... 9, 14

Cal. Civ. Code § 1799.3 ................................................................................................................. 1

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................. passim

**OTHER AUTHORITIES**

William B. Rubenstein, Newberg and Rubenstein on Class Actions, § 13.44 (6th ed. 2025) ........... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On August 19, 2025, this Court preliminarily approved the Settlement and directed notice to be sent to the Class.[1]  ECF No. 119.  The Settlement Administrator has implemented the Court-approved notice plan, which achieved excellent results, as evidenced by the overwhelmingly positive reaction from the Class.  After successfully sending direct notice to the Class, 20,422 class members submitted claims with only two requests for exclusion and zero objections.  Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan ("Azari Decl.") ¶ 22.  As courts in this District have repeatedly noted, "[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 598 (N.D. Cal. 2020) (quoting *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015)); *See Smith v. Apple, Inc.*, 2025 WL 1266927, at *6 (N.D. Cal., May 1, 2025) ("[T]he settlement terms were publicized through a notice process that the Court has deemed adequate.  Only nineteen members requested exclusion from the settlement, and no Class Members objected.").

In all, this is an excellent settlement that has the overwhelming approval of the Class.  The Court should have no hesitation in granting Final Approval.

## PROCEDURAL AND FACTUAL BACKGROUND

On October 3, 2023, Plaintiff Thomas Fan filed this putative class action alleging that Defendants disclosed NBA Top Shot users' personally identifiable information ("PII") to Meta Platforms, Inc. without proper consent, in violation of the VPPA and its California state law corollary, California Civil Code §1799.3. ECF No. 1.  After nearly two years and hundreds of hours of hard-fought litigation, the Parties put down their swords and agreed to settle the dispute.

The Parties engaged in substantial motion practice, including three fully briefed pleading motions: (1) Dapper Lab's Inc.'s motion to dismiss itself from the action, (2) NBA Properties Inc.'s second motion to dismiss itself from the action, and (3) Plaintiff Fan's request to amend the complaint to add two new class representatives, Matthew Kimoto and Clinton Brown.  ECF Nos.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement.  *See* ECF No. 107-1, Ex. 1 ("Settlement").

25, 50, 89.  The Parties engaged in months of fulsome discovery.  Plaintiffs reviewed over twenty thousand pages of documents produced by Defendants.  All three Plaintiffs were deposed and completed their document production.  Bogdanovich Decl., ¶ 3.  Two Rule 30(b)(6) witnesses for both Defendants were also deposed, along with three fact witnesses in their personal capacity.  *Id*. Meta had also completed its document production and produced two declarations.  *Id*. ¶ 4. Plaintiffs had begun drafting their motions for class certification and summary judgment.  *Id*. ¶ 5.

In short, both sides had a clear understanding of the strengths and weaknesses of their case. With the fact-discovery cut-off approaching, on May 27, 2025, the Parties, through their respective counsel, participated in a full-day mediation with former United States District Judge Wayne R. Andersen, formerly of the Northern District of Illinois.  *Id*. ¶ 5.  Previously, Judge Andersen had successfully mediated two other VPPA cases .  *Id*.

While an agreement was not reached at the mediation, the Parties continued to engage in arms-length negotiations facilitated by Judge Andersen.  ECF No. 105.  On June 6, 2025, the Parties notified the Court that they had reached a settlement in principle.  ECF No. 106.  After further negotiations, the Parties executed a Term Sheet on July 14, 2025 resolving the case.

On July 31, 2025, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement.  ECF No. 107.  On August 14, 2025, Plaintiffs filed their Supplemental Brief in Support of Preliminary Approval of Class Action Settlement.  ECF No. 115.  The Court granted Plaintiffs' Motion for Preliminary Approval on August 19, 2025.  ECF No. 119.

**ARGUMENT**

**I.      CERTIFICATION OF THE CLASS IS APPROPRIATE**

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Certification of the Class is appropriate here, as the Court found at Preliminary Approval.

On August 19, 2025, the Court preliminarily approved the following Class definition, after concluding that the requirements of Rule 23(a) and (b)(3) were satisfied:

All individuals in the United States who had NBA Top Shot accounts and Facebook accounts from June 15, 2020 to January 30, 2025.

ECF No. 119, ¶ 4.  No substantive changes have occurred since that ruling, and, more importantly, no objections have challenged that conclusion.  Azari Decl. ¶ 20.  Further, "no facts that would affect these requirements have changed since the Court preliminarily certified the class."  *Smith*, 2025 WL 1266927, at *3.  The Court may therefore rely on the same rationale as explained in the preliminary approval order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3) in connection with final approval.  *See id.* ("[T]his order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."); *see also Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *4 (N.D. Cal., Feb. 27, 2023) (same).

## II.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"[S]trong judicial policy [] favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); Herbert B. Newberg and William B. Rubenstein, *Newberg and Rubenstein on Class Actions*, § 13.44 (6th ed. 2025) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

In evaluating a class action settlement, courts in the Ninth Circuit consider the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (the "*Hanlon* factors"):  (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members of the proposed settlement."  *Id.* at 1026

In addition to these factors, courts also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2).  There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement rather than displace each other.  *See In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) ("The key *Hanlon* factors are now

1    baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2)

2    analysis.").

3    **A.    The *Hanlon* Factors Weigh in Favor of Final Approval**

4        **1.    <u>The Strength of Plaintiffs' Case</u>**

5        In determining the likelihood of a plaintiff's success on the merits of a class action, "the

6    district court's determination is nothing more than an amalgam of delicate balancing, gross

7    approximations and rough justice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San*

8    *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted).  The court may

9    "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range

10    of settlement by considering Plaintiff[s'] likelihood of recovery." *Garner v. State Farm. Mut.*

11    *Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West*

12    *Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

13        Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories,

14    and defenses on both sides before engaging in arms-length negotiations with Defendant's counsel.

15    *See generally*, ECF No. 107; ECF No. 107-1.  Although Plaintiffs and Class Counsel had

16    confidence in their claims, they recognize that a favorable outcome was not assured, and Plaintiffs'

17    and the Class's ability to ultimately secure a favorable judgment at trial, the expense, duration, and

18    complexity of protracted litigation would be substantial and the outcome of trial uncertain.

19    Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class

20    suffered any harm or damages.  In addition, Defendants would no doubt present a vigorous defense

21    at trial, and there is no assurance that the Class would prevail—or even if they did, that they would

22    be able to obtain an award of damages significantly more than achieved here absent such risks.

23    Indeed, even if Plaintiffs prevailed on their VPPA claim at trial, statutory damages under the VPPA

24    are discretionary, meaning that even a total victory could result in zero recovery for the Class. ECF

25    No. 107-1, at 5, ¶ 19.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the

26    Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  The

27    Settlement also abrogates the risks that might prevent the Class from obtaining any relief.  *See also*

28    *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)

("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Thus, this factor weighs in favor of final approval.

### 2.    Risk of Continuing Litigation

Next, approval of the Settlement is appropriate given the risks associated with continued litigation.  By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay while ensuring recovery for the Class.  "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)) (internal quotation marks omitted).  "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification[.]"  *Id.* (citing *Rodriguez*, 563 F.3d at 966).

Here, in the absence of settlement, the Parties would have to continue litigating through class certification, summary judgment, and trial.  Given the disposition of the case, "[f]urther litigation, absent settlement would likely be lengthy and would present several difficulties to resolve."  *In re Apple Inc. Sec. Litig.*, 2024 WL 3297079, at *3 (N.D. Cal. June 3, 2024).  Plaintiffs faced significant hurdles to get the proposed class certified, defeat Defendants' forthcoming summary judgment motion, and prevail at trial and on any subsequent appeal.  Accordingly, this factor weighs in favor of final approval.

### 3.    Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs also face risks in certifying a class and maintaining class status through trial.  The Court has preliminarily approved the Class for settlement purposes but has not certified the proposed classes otherwise.  While numerous putative class actions have been brought under the VPPA, Plaintiffs are only aware of a single VPPA case where a contested motion for class certification has been granted.  *Jancik v. WebMD LLC*, 2025 WL 560705, at *1 (N.D. Ga. Feb. 20, 2025).  Two other courts denied motions for class certification and granted summary judgment in favor of defendants.  *In re Hulu Privacy Litig.*,

2014 WL 2758598 (N.D. Cal. June 17, 2014) (denying class certification of VPPA claim); *Therrien v. Hearst Television, Inc.*, 2025 WL 509454, at *1 (D. Mass. Feb. 14, 2025) (same); *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary judgment for defendant on VPPA claim); *Therrien v. Hearst Television, Inc.*, 2025 WL 1208535, at *4 (D. Mass. Apr. 25, 2025) (same); *see also* Bogdanovich Decl. ¶ 18.  While Plaintiffs have obtained written discovery and testimony they believe is sufficient to certify a class and establish that Defendants knowingly disclosed Class Members' PII to Meta, they are also keenly aware that this may not be enough.

Moreover, even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  Additionally, should the Court certify the class, Defendants may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff[s] and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate.  *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).  The Settlement eliminates these risks, expenses, and delay, and this factor therefore weighs in favor of final approval.

### 4.    Amount Offered in Settlement

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'"  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (citing *Rodriguez,* 563 F.3d at 965).  Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice."  *Id.*  In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628).  Because a settlement provides certain and

immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). Here, the total monetary value of the Class Settlement represents an outstanding recovery for the Class.

In this case, a $7,050,000 non-reversionary Settlement Fund has been created from which all Settlement Class Members are entitled to a *pro rata* share. Settl. ¶ 2.1(a)-(b). As of November 21, 2025, 20,422 valid claims have been received. *See* Azari Decl. ¶ 22. At the current claims rate, assuming that attorneys' fees, costs, and expenses, and the service award are approved in full, Class Counsel estimates each Settlement Class Member providing a valid claim form will be entitled to a *pro rata* portion of approximately $224.[2]

This is an excellent recovery and is comparatively superior to other privacy settlements under the VPPA or its state-law analogs, some of which have provided zero monetary recovery for class members. *Stark et al. v. Patreon, Inc.*, Case No. 3:22-cv-3131, ECF No. 192 (N.D. Cal. Sept. 23, 2024) (granting preliminary approval to VPPA settlement with recovery of $6.04 per class member); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *1 (approving VPPA settlement where balance of settlement proceeds, after payment of attorneys' fees and settlement administration expenses, went to *cy pres* rather than to class members); *Lane v. Facebook, Inc.*, 696 F.3d 811, 817 (9th Cir. 2012) (same). And it is especially excellent given that, while the VPPA allows for liquidated damages of $2,500 (18 U.S.C. § 2710(c)(2)(A)), such statutory damages are potentially subject to reduction on Due Process grounds. *See*, *e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of statutory damages).

---

[2] This estimate is calculated as follows: $7,050,000 (total settlement amount) - $75,271.97 (estimated administration costs) - $2,350,000 (requested award of attorneys' fees, costs and expenses) - $30,000 (requested client service awards) = $4,594,728.03/20,422 (claims submitted to date) = $224.99.

1    Weighing the benefits of the Settlement against the risks associated with proceeding in

2    litigation and in collecting on any judgment, the proposed Settlement is more than reasonable. *See*

3    *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *3 (N.D. Cal. Oct. 18, 2019) ("The amount of

4    the settlement is fair, adequate and reasonable given the risks of continued litigation.").

5    Accordingly, this factor weighs heavily in favor of final approval.

6    **5.    The Extent of Discovery**

7    Under this factor, courts evaluate whether Class Counsel had sufficient information to make

8    an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

9    454, 459 (9th Cir. 2000). Plaintiffs, by and through their counsel, have conducted extensive

10   research and investigation during the nearly two years of litigation and substantial discovery that

11   took place. ECF No. 107 at 16.

12   Plaintiffs reviewed over twenty thousand documents, including emails, chat messages,

13   PowerPoint presentations, and material concerning the programing of the Meta Pixel on the

14   website, the tracking of the effectiveness of Defendant's ad campaigns, and the relationship

15   between Defendants. Bogdanovich Decl., ¶ 3. A Rule 30(b)(6) witnesses for Dapper and another

16   for the NBA were both deposed. *Id.* ¶ 3. Three of Defendants' fact witnesses also testified in their

17   personal capacity: one about the implementation of the Meta Pixel, targeted advertising, and

18   audience measurement, while another two testified about the NBA's relationships with Dapper. *Id.*

19   All three Plaintiffs were deposed and had completed their document production. *Id.* Meta had also

20   produced spreadsheets for all three Plaintiffs—including Thomas Fan—showing hundreds of

21   instances where Plaintiffs had either viewed or purchased moments, along with the URLs to those

22   specific videos. *Id.* ¶ 4. In other words, the Parties had all but completed discovery and Plaintiffs

23   had begun drafting their motions for class certification and summary judgment.

24   Thus, the Parties had sufficient information to assess the strengths and weaknesses of their

25   claims and defenses in reaching the Settlement. Bogdanovich Decl. ¶ 5. Accordingly, this factor

26   also weighs in favor of final approval. *See Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at

27   *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached

28   'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted).

### 6.    Experience and Views of Counsel

"Where '[b]oth Parties are represented by experienced counsel,' the recommendation of experienced counsel to adopt the terms of the proposed settlement 'is entitled to great deal of weight.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017) (internal citations omitted).  Specifically, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness" as the "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Boyd v. Bechtel Corp.* 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* ECF No. 107-1, Ex. 2, Firm Resume of Bursor & Fisher, P.A.  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### 7.    The Presence of a Governmental Participant

No governmental agency is involved in this litigation, but the Attorney General of the United States and Attorneys General of each State have been notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and have had an opportunity to raise any concerns or objections, and none have done so.  Azari Decl. ¶ 6.

### 8.    The Response of Class Members Has Been Overwhelmingly Positive

The objection and opt-out deadlines lapsed on November 17, 2025. To date, not a single Class Member objected to the Settlement, and only two Class Members opted out.  *See* Azari Decl. ¶ 20.  Such an overwhelmingly positive response from Class Members strongly supports final approval.  *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("No objections have been submitted. The absence of a negative reaction weighs in favor of approval.") (cleaned up); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 270 (E.D. Cal. 2014) ("Significantly, no objections were filed by Class Members following service of the Class Notice Packet. … Therefore, this factor weighs in favor of the Settlement.") (internal

citation omitted); *Arreola v. Shamrock Foods Co.*, 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021) ("A low proportion of opts outs and objections 'indicates that the class generally approves of the settlement.' Therefore, this factor weighs in favor of final approval.") (citations omitted).

**B.    The Rule 23(e)(2) Factors Weigh in Favor of Final Approval**

**1.    The Class Representatives and Class Counsel Have Adequately Represented the Class (Fed. R. Civ. P. 23(e)(2)(A))**

As the Court already found at Preliminary Approval, "Plaintiffs and Class Counsel … fairly and adequately represent the Settlement Class." ECF No. 119 ¶ 5. There is no reason to deviate from that conclusion. Plaintiffs have been consistently involved in this litigation, providing valuable insight and useful facts allowing Class Counsel to effectively litigate this action and negotiate this Settlement. Further, Plaintiffs regularly communicated with Class Counsel regarding various issues pertaining to this case and will continue to do so until the Settlement is approved, and its administration completed. Bogdanovich Decl. ¶ 10. Likewise, Class Counsel vigorously prosecuted this action and will continue to do so through final approval. *Id.* ¶ 12. Class Counsel identified and investigated the claims in this lawsuit and the underlying facts and successfully negotiated this Settlement. Bogdanovich Decl. ¶ 3. Those efforts led to a recovery of approximately $224 per Settlement Class Member. And Class Counsel is sufficiently experienced in class action litigation and privacy litigation in particular. ECF No. 107-1 ¶¶ 12-15.

Accordingly, this factor weighs in favor of final approval.

**2.    The Settlement Was Negotiated at Arm's Length**

In evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations. When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Garner*, 2010 WL 1687832, at *9. Here, counsel for both Plaintiffs and Defendants are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral, Judge Wayne R. Andersen (Ret.). *See* ECF No. 107-1, Ex. 2; Bogdanovich

1    Decl., ¶ 5.  In other words, the negotiations were conducted at arm's length, non-collusive, well-

2    informed (in that they were conducted after an assessment of the strengths and weaknesses of the

3    claims on both sides), conducted between counsel on both sides with decades of class action

4    experience, and utilized the assistance of a well-respected mediator.  Use of a mediator "tends to

5    support the conclusion that the settlement process was not collusive."  *Villegas v. J.P. Morgan*

6    *Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

7            Under such circumstances, the proposed Settlement is entitled to a presumption of

8    reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments.  *See*

9    *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found

10   that Class Counsel have substantial experience in litigating and settling consumer class actions.

11   Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to

12   make an informed decision about the Settlement and about the legal and factual risks of the case. . .

13   The Settlement was also the product of arm's-length negotiations through mediation sessions and

14   follow-up communications supervised by [an experienced neutral].  There is no indication of any

15   collusion between the parties.").  Accordingly, the second Rule 23(e)(2) factor has been met.

16           **3.      <u>The Settlement Provides Adequate Relief to the Class</u>**

17           Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and

18   appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

19   the method of processing class-member claims, if required; (iii) the terms of any proposed award of

20   attorney's fees, including timing of payment; and (iv) any agreement required to be identified

21   under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i)-(iv).  These factors subsume several *Hanlon* factors,

22   discussed *supra*, including: "the risk, expense, complexity, and likely duration of further litigation"

23   (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor

24   3); and "the amount offered in settlement" (*Hanlon* Factor 4).  As noted above, the Settlement has

25   met each of the *Hanlon* factors.  *See* Section III.A, *supra*.

26           As to "the effectiveness of any proposed method of distributing relief to the class," it is

27   "important for the court to scrutinize the method of claims processing to ensure that it facilitates

28   filing legitimate claims."  *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal.

July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).  "A claims

processing method should deter or defeat unjustified claims, but the court should be alert to

whether the claims process is unduly demanding."  *Id.*    Here, the Claims Administrator has

applied methods to detect fraudulent claims and duplicate submissions.  Azari Decl. ¶¶ 11, 22.

Under the terms of the Settlement, Class Members with Approved Claims are entitled to "a *pro

rata* payment from the Settlement Fund.  Proration of amounts due to Settlement Class Members

with Approved Claims shall be determined no later than 60 days after entry of a Final Judgment."

ECF No. 107-1, Ex. 1 § 2.1 (b).  The Court should find that this "process is not unduly demanding,

and [] the proposed method of distributing relief to the Class is effective."  *Alvarez*, 2020 WL

7314793, at *6.

Next, as to "the terms of any proposed award of attorneys' fees," Class Counsel filed a fee

application on October 7, 2025, consistent with the Settlement Agreement, for an award of

$2,350,000 in attorneys' fees, costs, and expenses, and incentive awards in the amount of $10,000

each for Plaintiffs Thomas Fan, Matthew Kimoto, and Clinton Brown.  ECF No. 120; ECF No.

107-1, Ex. 1 §§ 8.1, 8.3.  That request is more than reasonable for the reasons set forth in the

Motion for Attorneys' Fees.  *See generally* ECF No. 120.  Finally, there are no agreements between

Plaintiffs, Class Counsel, and Defendants other than the Settlement.  The Settlement therefore

provides adequate relief to the Class under Rule 23(e)(2)(C), and the requested attorneys' fees are

reasonable in relation to such relief.

### 4.    The Settlement Treats All Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably

relative to each other.'"  *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)).  In

assessing this factor, "the Court considers whether the proposal 'improperly grant[s] preferential

treatment to class representatives or segments of the class.'"  *Id.* (citing *In re Tableware Antitrust

Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, all Class Members are entitled to the same relief under the Settlement Agreement,

and all Class Members will receive a *pro rata* distribution of the Settlement Fund based on the

number of Approved Claims.  ECF No. 107-1, Ex. 1 § 2.1 (b).  Courts in this Circuit have found

that allocating settlement benefits to Settlement Class Members on a *pro rata* basis is equitable. *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *Boyd v. Avanquest N. Am. Inc.*, 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015) ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment to class representatives or segments of the class[]' because all class members are treated in the same way and there is no difference in treatment throughout the class.") (internal citations omitted). Thus, this factor also weighs in favor of granting final approval.

## III.    THE NOTICE PLAN PROVIDED THE BEST NOTICE PRACTICABLE

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004).

Pursuant to the Notice Plan approved by the Court, Defendants provided the Settlement Administrator, Epiq, with one data file with 1,340,265 records for identified Settlement Class Members, which included names and last known email addresses to the extent available.  *See* Azari Decl. ¶ 11.  Of that, 1,334,388 records were found to be unique, identified Settlement Class Member records.  *Id.*  Of these, 2,661 records did not contain a valid email address.  *Id.*  Epiq sent direct email notices to the remaining 1,331,727 email addresses.  *Id.* ¶ 12.  If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier.  *Id.* ¶ 13.  For Email Notices for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts were made to deliver the Notice by email.  *Id.*  Epiq confirmed that 1,195,971 emails were delivered successfully.  *Id.* ¶ 15.  Thus, the individual notice efforts reached approximately 90% of the identified Settlement

Class Members. *Id.* The email notices informed Class Members of the settlement and directed them to the Settlement Website for more information. A true and correct copy of the Email Notice is attached as Attachment 2 to the Azari Declaration.

Epiq also established a Settlement Website that included case-related documents, a set of frequently asked questions, information on how to object to the settlement or request exclusion, and contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* ¶ 17. Finally, Epiq provided notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.* ¶ 6.

These efforts met the requirements for effective notice under Rule 23 and appraised the Class of the Settlement. *Id.* ¶ 7. This resulted in 20,422 pending claims, *zero* objections, and only two requests for exclusion. *Id.* ¶¶ 20, 22. Accordingly, Plaintiffs ask the Court to find: (1) the Notice Plan was reasonably calculated to give actual notice to Class Members of their rights to receive benefits from the Settlement, or otherwise how to exclude themselves from or object to the Settlement; and (2) the Notice Plan satisfied due process requirements and any other applicable requirements under federal law. *Hanlon*, 150 F. 3d at 1024.

Epiq effectuated the Notice Plan, as ordered by the Court in its Preliminary Approval Order, and the Notice Plan was designed to ensure the widest possible reach and provide the most practicable notice of the Settlement to Class Members. Epiq's efforts as Settlement Administrator, and the Notice as effectuated, support final approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court finally approve the Settlement. A Proposed Order is submitted herewith.

Dated: November 21, 2025          **BURSOR & FISHER, P.A**.

By:   */s/ Stefan Bogdanovich*
          Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          sbogdanovich@bursor.com

*Attorneys for Plaintiffs*